**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **Tommy Meadows**,<br>c/o Friedman, Gilbert + Gerhardstein<br>50 Public Square, Suite 1900<br>Cleveland, Ohio 44113,<br><br>      Plaintiff,<br><br>-vs-<br><br>**Correctional Officer C. Coppick**,<br>**Correctional Officer K. Plowman**,<br>**Correctional Officer J. Kinner,**<br>**Correctional Officer C. Boyd,**<br>**Correctional Officer D. Smith**,<br>**Lieutenant William Bauer**,<br>c/o Ohio Department of Rehabilitation<br>and Correction, Southern Ohio<br>Correctional Facility<br>1724 St. Rt. 728<br>Lucasville, OH 45699,<br><br>      Defendants. | **CASE NO. 1:21-cv-00322**<br><br>**JUDGE**<br><br><br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tommy Meadows for his Complaint against Defendant Officers C. Coppick, Officer K. Plowman, Officer J. Kinner, Officer C. Boyd, Officer D. Smith, and Lt. William Bauer, alleges as follows:

**INTRODUCTION**

1.  This is a civil rights action. On May 19, 2019, Tommy Meadows stood in a meal time line with a group of inmates at Southern Ohio Correctional Facility when a fight broke out among inmates behind him. Meadows was not involved in the altercation, but following the fight, Defendant Coppick handcuffed Meadows and began to escort him out of the corridor. During the escort, Defendant Coppick threw Meadows to the ground. Defendant Smith

1

approached and placed Meadows in leg irons. After pulling Meadows to his feet, and with the assistance of Defendant Officers Plowman, Kinner, and Boyd, Defendant Coppick shoved Meadows against the wall and, again, threw him to the ground. The Defendant Officers piled on to Meadows. Once Meadows was securely placed in a strip cell, Defendant Lt. William Bauer deployed O.C. spray into Meadows' face on two separate occasions. After Defendant Bauer's initial use of O.C. spray, Defendant Bauer left the area of the strip cell. He returned four minutes later, as Meadows remained secured in the cell, and again deployed the spray into Meadows' face.

2. Defendants' unprovoked and unnecessary actions constituted cruel and unusual punishment and excessive force against Plaintiff Tommy Meadows, in violation of his constitutional rights.

3. Following the May 19, 2019 incident, Meadows was subject to threats and retaliation by Defendants. In July 2019, Defendant Plowman filed a fabricated and retaliatory conduct report against Meadows. Defendant Plowman's actions resulted in disciplinary action against Meadows, placement in Extended Restrictive Housing for up to two years, and loss of inmate privileges.

4. Plaintiff Meadows seeks damages and other relief under federal and state law.

## JURISDICTION AND VENUE

5. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States.

6. Supplemental jurisdiction over the related state law claims is invoked pursuant to 28 U.S.C. §1367.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b). The parties reside, or, at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

## PARTIES

8.      Plaintiff Tommy Meadows, at all times relevant to the allegations made in the Complaint, resided in the City of Lucasville, Ohio in Scioto County.

9.      Defendant Correctional Officers C. Coppick, K. Plowman, J. Kinner, C. Boyd, and D. Smith were, at all times relevant to the allegations made in this complaint, duly appointed correctional officers employed by the Ohio Department of Rehabilitation and Correction, acting within the scope of their employment and under the color of state law. They are sued in their individual capacities.

10.      Defendant Lieutenant William Bauer was, at all times relevant to the allegations made in this complaint, a duly appointed lieutenant correctional officer employed by the Ohio Department of Rehabilitation and Correction, acting within the scope of his employment and under the color of state law. He is sued in his individual capacity.

## FACTS

11.      On May 19, 2019, Tommy Meadows was an inmate at the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio.

12.      On May 19, 2019, a group of inmates, including Tommy Meadows, stood in line for meal time in the prison's G-corridor. A fight broke out among other inmates which correctional officers arrived to break up.

13.      Defendant Coppick handcuffed Plaintiff, who was standing several feet away from the altercation and had not been involved.

14.     While escorting Plaintiff out of the corridor, Defendant Coppick began to twist and bend Plaintiff's fingers and hand.

15.     Defendant Coppick pushed Plaintiff against the wall, then used a takedown maneuver to throw Plaintiff to the ground. Plaintiff struck his head during the takedown.

16.     Defendant Coppick climbed on top of Plaintiff. Defendant D. Smith approached and put leg irons on Plaintiff's legs.

17.     Defendant Coppick pulled Plaintiff up from the ground. Defendants Coppick and Plowman continued to escort Plaintiff to the strip cell.

18.     Defendants Coppick and Plowman pushed Plaintiff against the wall. Plaintiff's face struck the wall, leaving a large smear of blood from the wounds inflicted in the takedown.

19.     Plaintiff was once again taken to the ground by Defendants, where he was pinned down by Defendant Coppick, Defendant Plowman, and Defendant Boyd. Defendants Smith and Kinner approached.

20.     Defendant Kinner pressed his knee to the back of Meadows' head while Meadows was on the ground.

21.     Defendant Smith and other officers crowded around to observe the actions of Defendants yet failed to intervene to stop the Defendants' brutality in spite of their opportunity and duty to do so.

22.     During the encounter, Meadows' head was forcefully shoved into the ground multiple times.

23.     Meadows sustained two lacerations on his head, one to his left forehead and one above his right eye, which bled profusely during the encounter.

24.     Meadows was pulled to his feet and placed in the J2 strip cage by Defendants Coppick and Kinner.

25.     The strip cell door was closed behind Meadows as he entered the cell.

26.     After the strip cell door was closed securely behind Meadows, Defendant Lt. William Bauer approached the cell and deployed OC spray directly at Meadows' face.

27.     Defendant Bauer left the area of the strip cage. He returned approximately four minutes later to the area near the strip cage.

28.     Meadows remained handcuffed and secured in the strip cage.

29.     Defendant Bauer stated he was "going to kill" Meadows.

30.     Bauer ordered Meadows to turn around.

31.     When Meadows followed Defendant Bauer's instruction to turn around, Defendant Bauer again sprayed Meadows in the face with OC spray.

32.     Meadows did not present a threat to anyone at the time Defendant Bauer sprayed him.

33.     Meadows remained handcuffed and helpless throughout the assault.

34.     Meadows experienced pain and fear throughout the assault.

35.     Defendant Bauer stood by while subordinate Defendant Officers beat Meadows.

36.     Defendant Bauer did not have reason or justification for deploying OC spray against a handcuffed inmate secured in a strip cage.

37.     As a direct and proximate result of Defendants' conduct, Meadows sustained physical and psychological injuries, including bodily pain, lacerations to his face, cognitive symptoms of concussion or other head injury, and trauma from the assault. Meadows continues to suffer ongoing pain and damage.

38.     Defendants' actions were without probable cause, unjustified, objectively unreasonable, with deliberate indifference to the rights and safety of Meadows, and constitute cruel and unusual punishment.

39.     Each Defendant had the duty and opportunity to intervene to protect Meadows and prevent the unconstitutional use of force against him, and failed to do so.

40.     Defendants jointly agreed and/or conspired with each other to complete false, misleading, and incomplete official reports and to give a false, misleading, and incomplete version of events to their supervisors, prison administration, police, and prosecutors in order to cover up their own misconduct.

41.     Meadows immediately began attempts to access the grievance procedure at SOCF to address the May 19, 2019 incident.

42.     Meadows experienced threats from prison staff following the attack, including correctional officers telling Meadows "this is not over," "[Meadows] did that to the wrong lieutenant," and other statements.

43.     Meadows understood these statements from correctional officers as threats to his physical safety.

44.     On July 31, 2019, approximately two months after the use of force against Meadows, Defendant Plowman filed a fabricated Conduct Report against Meadows.

45.     In the fabricated report, Defendant Plowman falsely claimed he overheard Meadows and another inmate making threatening statements regarding the murder of a corrections officer.

46.     Meadows did not participate in any such conversation regarding the murder of a corrections officer.

47.     Meadows did not make threats to harm a corrections officer.

48.     Based solely on the July 31, 2019 Conduct Report of Defendant Plowman, Meadows was subject to a hearing by the Serious Misconduct Panel and penalized to 24 months in Extended Restrictive Housing, with a prospective end date of July 31, 2021.

49.     Due to these threats of retaliation and Defendant Plowman's actions, Meadows became extremely concerned for his safety.

50.     Meadows lived in fear that he would be hurt or killed in reprisal for the events of May 19, 2019 and for asserting his right to speak out about and legally challenge the force used against him that day.

51.     Defendants acted under color of law and deprived Meadows of federally protected rights, in violation of Title 42 U.S.C. §1983.

52.     In violating Meadows' rights, Defendants also engaged in willful, wanton, reckless, and/or negligent conduct.

53.     Defendants' conduct was the direct, actual, and proximate cause of Meadows' injuries.

54.     The injuries suffered by Meadows were all preventable had Defendants not engaged in illegal conduct in violation of Meadows' fundamental rights.

## FIRST CLAIM FOR RELIEF
**42 U.S.C. § 1983 Claim for Cruel and Unusual Punishment and Excessive Force against Defendant Officers C. Coppick, K. Plowman, J. Kinner, C. Boyd, D. Smith, and William Bauer**

55.     All of the foregoing paragraphs are incorporated as though fully set forth here.

56.     The actions of Defendants Coppick, Plowman, Kinner, Boyd, Smith, and Bauer as alleged in the preceding paragraphs, constitute cruel and unusual punishment, and violated Tommy Meadows' rights under the Eighth Amendment to the United States Constitution, and his

right to due process under the Fourteenth Amendment to the United States Constitution, and caused the injuries alleged in this complaint.

57.     Defendants further had the duty and opportunity to intervene to protect Meadows and to prevent the harm to Meadows, yet they did nothing to assist him or prevent the brutality meted out by fellow officers.

58.     The actions of the Defendants were taken jointly, in concert, and with shared intent.

59.     Defendants' conduct constitutes unnecessary and wanton infliction of pain and suffering.

60.     Defendants' conduct, and the violations of Meadows' rights, were sufficiently serious and resulted in unquestioned and serious deprivations of Meadows' basic human needs, denying him the minimalized measure of life's necessities.

61.     Defendants were deliberately indifferent to Meadows' rights under the Eighth Amendment.

62.     Defendants knew that Meadows faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.

63.     Defendants acted intentionally, willfully, and/or in a reckless, wanton, gross, or unreasonable manner.

64.     As a direct and proximate cause of Defendants' misconduct, Meadows suffered and continues to suffer injury and damages as set forth in this Complaint.

65.     Defendants are jointly and severally liable for this conduct.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Supervisory Liability
### against Defendant Lieutenant William Bauer

66.     All of the foregoing paragraphs are incorporated as though fully set forth here.

8

Defendant Bauer violated Meadows' constitutional rights in one or more of the ways described above, and/or knew or reasonably should have known that officers under his supervision would violate and/or violated Meadows' constitutional rights as described in this Complaint.

67.     Defendant Bauer, who was a supervisor at SOCF, directly committed, participated in, encouraged, facilitated, approved, condoned, turned a blind eye to, knowingly acquiesced, authorized, approved of, and/or purposely ignored the misconduct by Defendants described in this Complaint, including constitutional violations pursuant to, inter alia, the Fourth, Eighth, and Fourteenth Amendments.

68.     Defendant failed to properly train and supervise his subordinates in following the prescriptive law and regulations through adequate policies and procedures regarding properly conducting a constitutional search and seizure and in respecting prisoners' Fourth, Eighth, and/or Fourteenth Amendment rights.

69.     Defendant's failure to institute adequate policies and procedures and to train and supervise subordinate staff is evident in the failure of multiple Correctional Officers to provide Meadows with freedom from violations of his Fourth, Eighth, and Fourteenth Amendment rights.

70.     Therefore, the acts of Defendant Lieutenant Bauer violated 42 U.S.C. § 1983.

71.     Defendants acted intentionally, willfully, and/or in a reckless, wanton, gross or unreasonable manner.

72.     As set forth in the foregoing paragraphs, Defendants violated Meadows' constitutional rights, and caused the injuries set forth in this Complaint.

73.     Defendant Bauer was acting under color of law and within the scope of his employment when he took these actions.

74.     As a direct and proximate result of the actions of Defendant Bauer, Meadows'

constitutional rights were violated and he suffered injuries and damages and continuing injuries

and damages as set forth above.

75.     Defendants are jointly and severally liable for this conduct.

## THIRD CLAIM FOR RELIEF
### State Law Claim for Negligence – Willful, Wanton, and Reckless Conduct
### against Defendants

76.     All of the foregoing paragraphs are incorporated as though fully set forth here.

77.     Defendant Correctional Officers acted negligently when they violated their duty to

exercise due care for Tommy Meadows.

78.     Defendants committed the acts alleged in this complaint in a reckless, willful,

and/or wanton manner while working as correctional officers for the Ohio Department of

Rehabilitation and Correction.

79.     Defendants' misconduct directly and proximately caused the injuries and damages

suffered by Tommy Meadows as described above.

80.     Defendants are jointly and severally liable for this conduct.

## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for First Amendment Retaliation against Defendant Plowman

81.     All of the foregoing paragraphs are incorporated as though fully set forth here.

82.     It is "well-established that a public official's retaliation against an individual

exercising his or her First Amendment rights is a violation of § 1983." *Barrett v. Harrington*, 130

F.3d 246, 264 (6th Cir. 1997).

83.     At all material times, Tommy Meadows was engaged in constitutionally protected

activity, exercising his clearly established First Amendment rights to lawful speech, including his

attempts to report and testify regarding the May 19, 2019 use of force.

10

84.     Defendant Plowman's actions directly prevented Meadows from continuing to engage in his fully protected constitutional activity in the time and manner of his choosing, including but not limited to causing Meadows to be placed for an extended period of time in limited-privilege segregation housing.

85.     Defendant Plowman was motivated to take these adverse actions in whole or in part because of the content of Meadows' constitutionally protected speech.

86.     Defendant Plowman's adverse actions violated Meadows' clearly established First and Fourteenth Amendment rights in light of clearly established law.

87.     Defendant Plowman's actions violate the First and Fourteenth Amendments via 42 U.S.C. § 1983.

88.     As a direct and proximate result of Defendant Plowman's unlawful activity, Meadows has suffered and continues to suffer the injuries and damages set forth above.

89.     Defendant Plowman's acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendant Plowman and others from engaging in this type of unlawful conduct.

## PRAYER FOR RELIEF

Meadows demands that judgment be entered in his favor on all counts and prays the Court award the following relief:

A.      Actual and/or compensatory damages against all Defendants in an amount to be determined at trial that will fully and fairly compensate him for the violation of his rights, and for the injuries and damages he suffered;

B.      Punitive damages against all Defendants in an amount to be determined at trial that will serve to adequately punish and deter the acts and omissions alleged in this complaint;

C.      Declaratory and/or injunctive relief;

D.      Attorney fees and the costs of this action and other costs that may be associated with this action pursuant to 42 U.S.C. § 1988; and

E.      All other relief which this Honorable Court deems equitable and just.


### *TRIAL BY JURY ON ALL CLAIMS FOR RELIEF HEREBY DEMANDED.*


>                    */s/ Sarah Gelsomino*
>                    Sarah Gelsomino (0084340)
>                    FRIEDMAN, GILBERT + GERHARDSTEIN
>                    50 Public Square, Suite 1900
>                    Cleveland, OH 44113-2205
>                    T: 216-241-1430
>                    F: 216-621-0427
>                    sarah@FGGlaw.com
>
>                    Rebecca P. Salley (0097269)
>                    FRIEDMAN, GILBERT + GERHARDSTEIN
>                    441 Vine Street, Suite 3400
>                    Cincinnati, Ohio 45202
>                    T: (513) 572-4200
>                    F: (216) 621-0427
>                    rebecca@FGGfirm.com
>
>                    *Counsel for Plaintiff*


### Certificate of Service

I hereby certify that on June 7, 2021 a copy of the foregoing was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>                    */s/ Sarah Gelsomino*
>                    Sarah Gelsomino
>                    *One of the Attorneys for Plaintiff*