# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TOMMY MEADOWS,                                  Case No. 1:21-cv-322
     Plaintiff,                                 Cole, J.
                                                Litkovitz, M.J.

     vs.

CORRECTIONAL OFFICER                            **REPORT AND**
C. COPPICK, et al.,                             **RECOMMENDATION**
     Defendants.

Plaintiff brings this prisoner civil rights action under 42 U.S.C. § 1983 alleging that defendants Southern Ohio Correctional Facility ("SOCF") Correctional Officers C. Coppick, K. Plowman, J. Kinner, C. Boyd, and D. Smith, and SOCF Lieutenant William Bauer used excessive force against him and were deliberately indifferent to the others defendants' use of force by failing to intervene in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (Doc. 17). Plaintiff also brings a supervisory liability claim against defendant Bauer and a First Amendment retaliation claim against defendant Plowman. (*Id.*). This matter is before the Court on defendants' motion for judgment on the pleadings (Doc. 22), plaintiff's response in opposition (Doc. 24), and defendants' reply memorandum (Doc. 25).

## I. Background

Plaintiff alleges the following facts in his second amended complaint: On May 19, 2019, the date the alleged incident occurred, plaintiff was an inmate at SOCF. (Doc. 17 at PAGEID 77). On this date, a "fight broke out among other inmates," while plaintiff "stood in line for meal time in the prison's G-corridor." (*Id.*). Plaintiff "was not involved in the altercation[.]" (*Id.* at PAGEID 75; *see also Id.* at PAGEID 77). Defendant Coppick handcuffed plaintiff, escorted him out of the corridor, and "began to twist and bend Plaintiff's fingers and hand." (*Id.* at PAGEID 77-78). Plaintiff alleges that defendant Coppick "pushed" plaintiff against the wall

and "used a takedown maneuver to throw Plaintiff to the ground." (*Id*. at PAGEID 78).  Plaintiff "struck his head during the takedown." (*Id*.).  Defendant Coppick "climbed on top" of plaintiff while defendant Smith "approached and put leg irons on Plaintiff's legs." (*Id*.).  Defendants Coppick and Plowman escorted plaintiff to the strip cell. (*Id*.).

Plaintiff alleges that defendants Coppick and Plowman "pushed" plaintiff against the wall causing plaintiff to strike his face, "leaving a large smear of blood from the wounds inflicted in the takedown." (*Id*.).  Defendants Coppick, Plowman, and Boyd "pinned" plaintiff to the ground. (*Id*.).  Defendant Kinner then "pressed his knee to the back of [plaintiff's] head" while plaintiff was on the ground. (*Id*.).  Plaintiff alleges that defendant Smith "and other officers crowded around to observe the actions of Defendants yet failed to intervene to stop the Defendants' brutality in spite of their opportunity and duty to do so." (*Id*.).  Plaintiff's head was "forcefully shoved into the ground multiple times." (*Id*.).  As a result, plaintiff "sustained two lacerations on his head, one to his left forehead and one above his right eye, which bled profusely during the encounter." (*Id*.).

Defendants Coppick and Kinner pulled plaintiff to his feet and placed plaintiff in the J2 strip cell. (*Id*. at PAGEID 79).  Plaintiff alleges that after "the strip cell door was closed securely[,] . . . Defendant Lt. William Bauer approached the cell and deployed OC spray directly at [plaintiff's] face." (*Id*.).[1]  Defendant Bauer "left the area of the strip cage" and "returned approximately four minutes later. . . ." (*Id*.).  While plaintiff was "handcuffed and secured in the strip cage," defendant Bauer told plaintiff that "he was 'going to kill' [plaintiff]." (*Id*.).  Defendant Bauer ordered plaintiff to turn around. (*Id*.).  Plaintiff obeyed this instruction. (*Id*.).  Defendant Bauer "again sprayed [plaintiff] in the face with OC spray." (*Id*.).  Plaintiff alleges

---

[1] The Court understands plaintiff's allegations concerning the use of "OC spray" to mean Oleoresin Capsium pepper spray—a chemical agent used by SOCF correctional officers.

that during this time, he "did not present a threat to anyone," "remained handcuffed and helpless," and "experienced pain and fear throughout the assault." (*Id*.). The second amended complaint further alleges that "[d]efendant Bauer stood by while subordinate Defendant Officers beat [plaintiff]." (*Id*.). Plaintiff alleges that in addition to "ongoing pain and damage," plaintiff also "sustained physical and psychological injuries, including bodily pain, lacerations to his face, cognitive symptoms of concussion or other head injury, and trauma from the assault." (*Id*.).

Following the May 19, 2019 incident, plaintiff "immediately began attempts to access the grievance procedure at SOCF to address the May 19, 2019 incident." (*Id*. at PAGEID 80). Plaintiff, however, "experienced threats from prison staff following the attack, including correctional officers telling [plaintiff] 'this is not over,' '[plaintiff] did that to the wrong lieutenant,' and other statements." (*Id*.). Plaintiff "understood these statements from correctional officers as threats to his physical safety." (*Id*.).

Plaintiff alleges that on July 31, 2019, defendant Plowman "filed a fabricated Conduct Report against [plaintiff]" in which defendant Plowman "falsely claimed he overheard [plaintiff] and another inmate making threatening statements regarding the murder of a corrections officer." (*Id*.). Plaintiff alleges that he "did not participate in any such conversation regarding the murder of a corrections officer" and "did not make threats to harm a corrections officer." (*Id*. at PAGEID 80-81). Plaintiff alleges that based "solely on the July 31, 2019 Conduct Report of Defendant Plowman, [plaintiff] was subject to a hearing by the Serious Misconduct Panel and penalized to 24 months in Extended Restrictive Housing. . . ." (*Id*. at PAGEID 81). Plaintiff "became extremely concerned for his safety" and "lived in fear that he would be hurt or killed in reprisal for the events of May 19, 2019 and for asserting his right to speak out about and legally challenge the force used against him that day." (*Id*.).

3

On these facts, defendants filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) on the ground that plaintiff's second amended complaint fails to state a claim upon which relief can be granted. (Doc. 22).

## II. Defendants' motion for judgment on the pleadings (Doc. 22)

### A. Standard of review

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008). *See also Oro Cap. Advisors, LLC v. Borror Constr. Co., LLC*, No. 2:19-cv-5087, 2021 WL 2457989, at *6 (S.D. Ohio June 16, 2021).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted)) (in turn quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

*Ashcroft*, 556 U.S. at 678. "Put another way, bare assertions of legal conclusions are not

sufficient." *Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 618 (S.D. Ohio 2016). "To

survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action is not enough." *Id*. at 617.

### B. Eighth Amendment claims

#### i. Excessive use of force (First Claim for Relief)

Plaintiff argues that defendants Coppick, Plowman, Kinner, Boyd, Smith, and Bauer used

excessive force against him in violation of the Eighth Amendment's prohibition against cruel and

unusual punishment. (Doc. 17 at PAGEID 82-84). In their motion for judgment on the

pleadings, defendants argue that plaintiff fails to state a plausible excessive force claim against

defendants. (Doc. 22 at PAGEID 122). Focusing "exclusively on the subjective component" of

plaintiff's Eighth Amendment claim (*Id*.), defendants contend that plaintiff "fails to allege

plausible facts that [defendants] acted with malicious and sadistic intent." (*Id*. at PAGEID 123).[2]

Defendants specifically argue that they did not engage in "malicious and sadistic conduct"

because plaintiff was in the "proximity to a dangerous prison disturbance, that involved several

inmates. . . ." (*Id*. at PAGEID 125).

A convicted prisoner's right to be free from the use of excessive force by prison officials

is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth

Amendment claim has both objective and subjective components. *Cordell v. McKinney*, 759

F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The

subjective component focuses on "whether force was applied in a good faith effort to maintain or

---

[2] Defendants do not allege that the objective component of plaintiff's Eighth Amendment claim is not satisfied. (*See* Doc. 22 at PAGEID 122). Therefore, the Court will not address the objective component.

restore discipline, or maliciously and sadistically to cause harm." *Id*. (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the threat reasonably perceived by the official, the extent of the injury inflicted, and "any efforts made to temper the severity of a forceful response." *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. The inmate is not required to suffer a serious injury, but the extent of his injuries may be considered in determining whether the force used was wanton and unnecessary. *Hudson*, 503 U.S. at 7-8.

### 1. Defendants Coppick, Plowman, Kinner, and Boyd

Defendants argue that plaintiff fails to state a plausible claim for excessive use of force because of plaintiff's "proximity to a dangerous prison disturbance, that involved several inmates." (Doc. 22 at PAGEID 125). Defendants contend that plaintiff "has failed to state a plausible claim that Defendants engaged in malicious and sadistic conduct" because defendants "faced [] a violent disturbance in the cafeteria" and therefore, defendants' uses of force were "justified in light of a fight breaking out amongst inmates in the cafeteria[.]" (*Id*.). At this stage in the proceedings, the Court finds that plaintiff has pled sufficient facts to satisfy the subjective component of an Eighth Amendment excessive force claim against defendants Coppick, Plowman, Kinner, and Boyd.

Defendants' argument that their uses of force were justified because defendants "faced [] a violent disturbance" is belied by the allegations of the second amended complaint because the numerous uses of force alleged by plaintiff occurred *after* plaintiff was escorted out of the cafeteria and *after* plaintiff was secured by handcuffs and then leg irons. Specifically, after plaintiff was handcuffed and escorted out of the corridor, where the alleged violent disturbance

occurred, defendant Coppick twisted and bent plaintiff's fingers and hand, pushed him against the wall, and threw plaintiff to the ground.  (Doc. 17 at PAGEID 78).  Plaintiff was put in leg irons and escorted to the strip cell.  (*Id.*).  While plaintiff was securely restrained in handcuffs and leg irons, defendants Coppick and Plowman pushed plaintiff against a wall, causing plaintiff's face to strike the wall leaving a large smear of blood.  (*Id.*).  Defendants Coppick, Plowman, and Boyd further pinned plaintiff to the ground while defendant Kinner pressed his knee to the back of plaintiff's head.  (*Id.*).  Plaintiff's head was shoved into the ground multiple times, and as a result of defendants' actions, plaintiff sustained two lacerations on his head, one to his left forehead and one above his right eye, which bled profusely during the encounter.  (*Id.*).

According to the facts pled in the second amended complaint, at the time defendants used force, they no longer faced a "violent disturbance" or "dangerous situation" involving "a breach of prison security and safety, in addition to prison rules."  (Doc. 22 at PAGEID 124-25).  Rather, defendants used force against plaintiff while plaintiff was securely restrained in handcuffs and leg irons and away from the situation in the cafeteria.  (*See* Doc. 17 at PAGEID 77-78).  There are no allegations that plaintiff was recalcitrant at any time during the encounter.  Nor are there any allegations that plaintiff was unruly, struggling, or posed a threat to any of the defendants.  Therefore, the allegations that defendants' uses of force, which occurred after plaintiff was escorted out of the cafeteria and while plaintiff was secured by handcuffs and leg irons, give rise to an inference that more force was used than necessary and that the force used by each of the defendants was applied maliciously and sadistically to cause harm.  *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (reversing dismissal of prisoner's claim of excessive force where prisoner disputed any force was needed once he was on the floor and not resisting officers).  Defendants' actions, if true, plausibly suggest that the amount of force the correctional

officers used was unnecessary and not applied in a good faith effort to maintain or restore discipline, but rather to cause harm. *Hudson*, 501 U.S. at 7. At this juncture, plaintiff has alleged sufficient facts to state a plausible claim for relief for excessive use of force under the subjective component of his Eighth Amendment claim against defendants Coppick, Plowman, Kinner, and Boyd.

### 2. Defendant Bauer

Plaintiff alleges that defendant Bauer initially deployed OC spray directly at plaintiff's face while plaintiff was in leg irons, handcuffs, and securely placed in the strip cell. These allegations give rise to an inference that defendant Bauer's use of force was applied maliciously and sadistically to cause harm rather than to gain compliance or control over a disruptive inmate. Plaintiff alleges defendant Bauer deployed OC spray a second time while plaintiff was still in the strip cage, stating that he was "going to kill" plaintiff. (Doc. 17 at PAGEID 79). In the absence of any allegations that plaintiff was disruptive or posed a threat to the security of the institution, defendant Bauer's second deployment of OC spray into the strip cage, coupled with the alleged threat to plaintiff's life, gives rise to an inference that Bauer's use of force was not applied in good faith effort to maintain or restore discipline, but rather to cause harm. These allegations are sufficient to satisfy the subjective component of plaintiff's Eighth Amendment excessive force claim against Bauer. *See Hudson*, 503 U.S. at 7; *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011) (the plaintiff stated a valid excessive force claim when he "allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him."); *Roberson v. Torres*, 770 F.3d 398, 406-07 (6th Cir. 2014) (denying qualified immunity at the summary judgment stage to the defendants who allegedly sprayed an inmate with a chemical agent while he was sleeping). Accordingly, plaintiff states a

8

plausible claim for relief for excessive use of force against defendant Bauer.

### 3. Defendant Smith

The Court finds that plaintiff has not stated a plausible claim for relief for excessive use of force against defendant Smith. In the second amended complaint, plaintiff alleges only that defendant "Smith approached and put leg irons on Plaintiff's legs." (Doc. 17 at PAGEID 78). Securing an inmate in handcuffs and leg irons is a normal incident of prison life in the movement of prisoners throughout the institution. Plaintiff has alleged no facts showing that defendant Smith engaged in any use of force, let alone an excessive use of force. Therefore, defendants' motion for judgment on the pleadings concerning plaintiff's excessive use of force claim against defendant Smith should be **GRANTED**.

### ii. Failure to intervene

Plaintiff brings a claim for failure to intervene against defendants Coppick, Plowman, Kinner, Boyd, Smith, and Bauer. (Doc. 17 at PAGEID 78-82). Plaintiff alleges that defendants "had the duty and opportunity to intervene to protect [plaintiff] and to prevent the harm to [plaintiff], yet they did nothing to assist him or prevent the brutality meted out by fellow officers." (*Id*. at PAGEID 82; *see also Id*. at PAGEID 80). In seeking judgment on the pleadings, defendants argue that plaintiff has failed to state a plausible claim for relief. (Doc. 22 at PAGEID 126-29). Defendants contend that plaintiff's factual assertions are conclusory and plaintiff's "bare recital of facts fail to push his claims from possibly stating a claim to actually asserting a plausible claim for relief." (*Id*. at PAGEID 129, citing *Iqbal*, 556 U.S. at 679). Defendants also contend that because plaintiff's allegations do not show that defendants violated plaintiff's clearly established rights, defendants are entitled to qualified immunity on plaintiff's failure to intervene claim. (*Id*. at PAGEID 129-30).

9

To state a claim for relief that defendants owed plaintiff a duty of protection and failed to intervene, plaintiff must show that defendants "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018) (quoting *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013)) (in turn quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)) (emphasis in original).  "The critical inquiry is whether the incident lasted long enough to give defendants the opportunity to perceive what was going on and intercede to stop it." *Lesowitz v. Tittle*, No. 5:17-cv-2174, 2019 WL 3006428, at *7 (N.D. Ohio July 10, 2019) (citing *Burgess*, 735 F.3d at 475).

Defendants argue that defendants Coppick, Plowman, Kinner, Boyd, Smith, and Bauer did not have the "'opportunity and means' to respond to Plaintiff's particular alleged plight" because "a fight had just broken out in the cafeteria, which involved several inmates. . . ."  (Doc. 22 at PAGEID 128).  At this juncture, for the reasons explained below, plaintiff states a plausible claim for relief against defendants Coppick, Plowman, Kinner, Boyd, and Smith for failure to intervene.

### 1. Defendants Coppick, Plowman, Kinner, and Boyd

As described above, defendants Coppick, Plowman, Kinner, and Boyd engaged in multiple uses of force against plaintiff on May 19, 2019.  Specifically, defendant Coppick twisted and bent plaintiff's fingers and hand, pushed him against the wall, and threw plaintiff to the ground.  After plaintiff was securely restrained in handcuffs and leg irons, defendants Coppick and Plowman pushed plaintiff against a wall, causing plaintiff's face to strike the wall leaving a large smear of blood.  Defendants Coppick, Plowman, and Boyd further pinned plaintiff to the ground while defendant Kinner pressed his knee into the back of plaintiff's head.

10

Plaintiff's head was shoved into the ground multiple times by defendants.

Plaintiff alleges that each "defendant had the opportunity to intervene to protect [plaintiff] and prevent the unconstitutional use of force against him, and failed to do so." (Doc. 17 at PAGEID 80). The second amended complaint alleges facts from which the Court can reasonably infer that defendants Coppick, Plowman, Kinner, and Boyd were present and, when not themselves actively engaged in a use of force, watched each other use force against plaintiff. Given the escort of plaintiff from the cafeteria to the strip cell, and the intervening uses of force by Coppick, Plowman, Kinner, and Boyd, the Court may infer that at least several minutes transpired so as to give rise to the opportunity and means for each of these defendants to intervene when not actively engaged in a use of force. *Cf. Burgess*, 735 F.3d at 475-76 (citing *Ontha v. Rutherford Cnty., Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007) (finding that six or seven seconds was insufficient time to compel intervention)). The undersigned concludes that plaintiff has stated a plausible claim for failure to intervene against defendants Coppick, Plowman, Kinner, and Boyd.

### 2. Defendant Smith

Plaintiff alleges that on May 19, 2019, defendant Smith approached the scene of the incident while defendant Kinner's knee was pressed to the back of plaintiff's head while plaintiff was on the ground. (Doc. 17 at PAGEID 78). Despite witnessing this use of force and having the opportunity to perceive what was going on and intercede to stop it, defendant Smith "crowded around to observe the actions of Defendants [and] failed to intervene to stop" the defendants' actions. (*Id.*). Plaintiff's allegations, taken as true, plausibly imply that defendant Smith observed and had reason to know that excessive force was being used by his fellow officers, and that he had both the opportunity and the means to prevent the harm from occurring.

11

Plaintiff therefore has plausibly alleged a failure to intervene claim against defendant Smith. *See Burgess*, 735 F.3d at 476.

### 3. Defendant Bauer

To the extent that plaintiff alleges a failure to intervene claim against defendant Bauer based on the single allegation that defendant "Bauer stood by while subordinate Defendant Officers beat" plaintiff (Doc. 17 at PAGEID 79), defendants' motion for judgment on the pleadings should be granted. Plaintiff's second amended complaint provides no factual content or context from which the Court may reasonably infer that defendant Bauer "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Partin*, 2018 WL 1631663, at *3 (quoting *Burgess*, 735 F.3d at 475) (in turn quoting *Turner*, 119 F.3d at 429) (emphasis in original). Plaintiff's second amended complaint does not mention defendant Bauer's involvement until plaintiff was placed inside the strip cage, after the other defendants escorted plaintiff down the hallway and engaged in their respective uses of force. There are no allegations that defendant Bauer was present in the cafeteria or hallway when plaintiff was being escorted to the strip cell such that he could have observed any alleged uses of force by Coppick, Plowman, Kinner, and Boyd. Plaintiff does not allege facts from which the Court could infer that defendant Bauer had the opportunity and means to intervene in the uses of force in the hallway leading to the strip cell. Nor does the complaint allege that plaintiff was removed from the strip cell after he was sprayed the second time by Bauer and that further actions were taken by Coppick, Plowman, Kinner, and Boyd to harm plaintiff. Therefore, plaintiff's conclusory "unadorned, the defendant-unlawfully-harmed-me accusation[s]" cannot survive a motion for judgment on the pleadings. *Iqbal*, 556 U.S. at 677-78. Accordingly, defendants' motion for judgment on the pleadings on

12

plaintiff's failure to intervene claim against defendant Bauer should be **GRANTED**.

### 4.  Qualified immunity

Defendants argue that they "are entitled to qualified immunity" on plaintiff's failure to intervene claim because plaintiff "fails to put forth a plausible claim that violated clearly established law."  (Doc. 22 at PAGEID 129).[3]  Specifically, defendants argue that they did not violate "clearly established law" because plaintiff failed to allege facts that defendants had the "opportunity and means" to intervene.  (*Id*.).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  The Supreme Court has described a two-part analysis for resolving government officials' qualified immunity claims. First, a court must ask whether the defendant's conduct violated a constitutional right.  *Id.* at 232. Second, the court must determine whether the constitutional right was "clearly established" at the time of the defendant's conduct.  *Id.*  "The 'dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  A court may begin its analysis with either prong, but both questions must be answered in the affirmative for liability to attach.  *Pearson*, 555 U.S. at 236.

As explained above, the second amended complaint plausibly alleges a failure to intervene claim against defendants Coppick, Plowman, Kinner, Boyd, and Smith.  Each

---

[3] The Court notes that defendants only seek qualified immunity on plaintiff's failure to intervene claim, not the excessive use of force claims.  (*See* Doc. 22 at PAGEID 122-30).

defendant was in the presence of the others and readily observed Coppick, Plowman, Kinner, and Boyd engage in the alleged excessive uses of force against plaintiff described above.  The allegations of the complaint describe a series of uses of force against an inmate who was shackled, handcuffed, and compliant over a period of time.  Coppick, Plowman, Kinner, Boyd, and Smith each had the means and opportunity to intervene to prevent the use of excessive force by his fellow officers.  Thus, plaintiff's second amended complaint states a constitutional claim and meets the first prong of the qualified immunity analysis.

The Court further determines that plaintiff's Eighth Amendment rights in this regard were "clearly established" at the time of defendants' conduct.  *Pearson*, 555 U.S. at 232.  In May 2019, it was clearly established that a corrections officer is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'"  *Burgess*, 735 F.3d at 475 (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin*, 2018 WL 1631663, at *3.  As the law was clearly established at the time of plaintiff was subjected to a series of uses of force by defendants Coppick, Plowman, Kinner, and Boyd, plaintiff satisfies the second prong of the qualified immunity analysis.  Therefore, defendants Coppick, Plowman, Kinner, Boyd, and Smith's request for qualified immunity on plaintiff's failure to intervene claim should be **DENIED**.

However, defendant Bauer's request for qualified immunity on plaintiff's failure to intervene claim should be **GRANTED** because, as previously explained, plaintiff fails to allege facts showing defendant Bauer failed to intervene in the actions of the other defendants in violation of the Eighth Amendment.

### iii. Supervisory liability against defendant Bauer (Second Claim for Relief)

In plaintiff's second claim for relief, plaintiff brings a claim for supervisory liability against defendant Bauer. (Doc. 17 at PAGEID 82). Plaintiff specifically alleges that "Defendant Bauer stood by while subordinate Defendant Officers beat [plaintiff]" and that he "directly committed, participated in, encouraged, facilitated, approved, condoned, turned a blind eye to, knowingly acquiesced, authorized, approved of, and/or purposely ignored the misconduct" of the of the other defendants. Plaintiff further alleges that defendant Bauer failed to supervise his subordinates in following the law, regulations, and procedure related to the use of force. (Doc. 24, quoting Doc. 17 at ¶ 34, 66-74).

Defendants argue that plaintiff fails to state a plausible claim for relief because plaintiff fails to include any "allegations that Defendant Bauer had any involvement, and to what extent, regarding Plaintiff's incident in the cafeteria, and during the escort, until Plaintiff was already placed in a strip-cage in J2." (Doc. 22 at PAGEID 131). Defendants also argue that plaintiff's "complaint is wanting of any factual allegations of what, when, where, and how Defendant Bauer allegedly failed to train the remaining Defendants." (*Id*. at PAGEID 132).

In this case, while plaintiff states an independent Eighth Amendment excessive use of force claim against defendant Bauer in connection with the two OC spraying incidents, plaintiff fails to allege facts supporting a claim of supervisory liability against defendant Bauer. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty., Ky.,* 668 F.2d 869, 874 (6th Cir. 1982)). "This requires some active unconstitutional behavior on the part of the supervisor." *Crawford v. Tilley*, 15

F.4th 752, 761 (6th Cir. 2021) (quoting *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir.

2016)) (internal quotation and additional citation omitted).  "In short, a plaintiff must plausibly

allege that a supervisory defendant 'authorized, approved, or knowingly acquiesced in the

unconstitutional conduct . . . of his subordinates through the execution of his job functions.'" *Id.*

at 761 (quoting *Peatross*, 181 F.3d at 242).  As recently explained by the Sixth Circuit:

> [L]iability cannot be imposed on a supervisor under § 1983 based on the theory of
> respondeat superior.  *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (citing
> *Hays v. Jefferson County*, 668 F.2d 869, 872-74 (6th Cir. 1982)).  But a supervisor
> may be liable under § 1983 if he "abandon[s] the specific duties of his position . . .
> in the face of actual knowledge of a breakdown in the proper workings of the
> department."  *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995)
> (quoting *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992)).  This liability,
> however, exists only where some "execution of the supervisors' job function
> result[s] in [the p]laintiff's injury."  *Gregory v. City of Louisville*, 444 F.3d 725,
> 752 (6th Cir. 2006).  In other words, the supervisor must have abdicated his specific
> job responsibility, with the "*active performance* of the [supervisor's] individual job
> function . . . directly result[ing] in the[ ] constitutional injury."  *Id.* (emphasis in
> original).

*Winkler v. Madison Cnty.*, 893 F.3d 877, 898-99 (6th Cir. 2018).  A prison official is not subject

to supervisory liability simply because he "was charged with overseeing a subordinate who

violated the constitutional right of another."  *Crawford*, 15 F.4th at 761 (internal citation and

quotation omitted).

Plaintiff's complaint against defendant Bauer fails to state a claim for relief for

supervisory liability under § 1983 because the complaint fails to allege any direct participation

by this defendant *in the other* defendants' actions.  As explained above in connection with the

failure to intervene claim against defendant Bauer, plaintiff's allegation that Bauer "stood by

while subordinate Defendant Officers beat [plaintiff]" (Doc. 17 at ¶ 34) is chronologically pled

after the second OC spraying incident.  Defendant Bauer is not mentioned at all until plaintiff

entered the strip cage, after the escort of plaintiff by the other defendants and after the various

16

uses of force by those defendants.  There are no allegations that Bauer participated in the escort

of plaintiff to the strip cage, that he was present in the hallway during that time, or that any of the

other defendants used force (aside from the two OC spraying incidents by Bauer) either inside or

outside the strip cage.  Nor does plaintiff allege that the excessive uses of force by Coppick,

Plowman, Kinner, and Boyd were part of a pattern of comparable violations, as opposed to an

isolated occurrence, so as to implicate a failure to train theory of liability.  *Hays*, 668 F.3d at 874.

Plaintiff's remaining conclusory allegations simply parrot the legal standard for supervisory

liability without including any factual content or context.  Therefore, plaintiff's second amended

complaint fails to state a claim for supervisory liability against defendant Bauer.  For this reason,

defendant Bauer is entitled to qualified immunity on this claim.  *Pearson*, 555 U.S. at 232.

### iv.  First Amendment retaliation (Third Claim for Relief)

In plaintiff's third claim for relief, plaintiff brings a claim for First Amendment

retaliation against defendant Plowman.  (Doc. 17 at PAGEID 84).  Plaintiff alleges:

- Meadows immediately began attempts to access the grievance procedure at SOCF to address the May 19, 2019 incident.

- Meadows experienced threats from prison staff following the attack, including correctional officers telling Meadows "this is not over," "[Meadows] did that to the wrong lieutenant," and other statements.

- Meadows understood these statements from correctional officers as threats to his physical safety.

- On July 31, 2019, approximately two months after the use of force against Meadows, Defendant Plowman filed a fabricated Conduct Report against Meadows.  In the fabricated report, Defendant Plowman falsely claimed he overheard Meadows and another inmate making threatening statements regarding the murder of a corrections officer.

- Meadows did not participate in any such conversation regarding the murder of a corrections officer.
- Meadows did not make threats to harm a corrections officer.

- Based solely on the July 31, 2019 Conduct Report of Defendant Plowman, Meadows was subject to a hearing by the Serious Misconduct Panel and penalized to 24 months in Extended Restrictive Housing, with a prospective end date of July 31, 2021.

(*Id*. at ¶¶ 40-47).

A prisoner's claim that a defendant retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999)) (en banc)). A retaliation claim has three elements: (1) the prisoner engaged in protected conduct; (2) an adverse action was taken against the prisoner that "'would deter a [prisoner] of ordinary firmness from continuing to engage in that conduct'"; and (3) the prisoner's protected conduct motivated the adverse action, at least in part. *Id*. (quoting *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007)) (in turn quoting *Thaddeus-X*, 175 F.3d at 394). The plaintiff's exercise of the protected conduct must be "a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin–Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)).

"Temporal proximity between the protected conduct and the adverse action by the state actor 'alone may be significant enough to constitute indirect evidence . . . to create an inference of retaliatory motive.'" *Paige v. Coyner*, 614 F.3d 273, 283 (6th Cir. 2010) (quoting *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004)); *see also Briggs v. Westcomb*, 801 F. App'x 956, 960 (6th Cir. 2020) (holding allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after inmate filed a grievance

18

against a medical provider, but only one day after the provider learned of the grievance).  *Cf.*

*Kirschke v. Chance*, No. 19-2324, 2020 WL 6703843, at *3 (6th Cir. July 21, 2020) (six months

between filing of grievance and adverse action too far removed to infer retaliatory motive).

While recognizing "temporal proximity between filing grievances and the adverse action

provides some support for establishing retaliatory motive," the Sixth Circuit "has been reluctant

to find that such evidence alone establishes retaliatory motive."  *Hill v. Lappin*, 630 F.3d 468,

476 (6th Cir. 2010) (finding inference of retaliatory motive where inmate placed in segregation

"right after" he filed complaint against prison official and disparate treatment of similarly

situated inmates).

     In their motion for judgment on the pleadings, defendants argue that plaintiff fails to state

a plausible retaliation claim against defendant Plowman.  (Doc. 22 at PAGEID 108, 133-34).

Defendants contend that plaintiff has failed to allege facts showing a causal connection between

plaintiff's grievance and defendant Plowman's conduct report two months later charging plaintiff

with a rule violation on an unrelated incident.  (*Id*. at PAGEID 134).  Defendants allege that

plaintiff speculates that Plowman's conduct report was an act of retaliation, and plaintiff fails to

allege facts showing Plowman acted with the requisite state of mind.  Defendants also contend

that because plaintiff's allegations do not show that defendant Plowman violated plaintiff's

clearly-established First Amendment rights, defendant Plowman is entitled to qualified immunity

insofar as plaintiff sues him in his individual capacity.  (*Id*. at PAGEID 135).

     Plaintiff contends that temporal proximity is only one factor in assessing the link between

and protected activity and the retaliatory action of a corrections guard.  Plaintiff alleges that the

other facts pled in the second amended complaint contextualized this claim and state a retaliation

claim against defendant Plowman.

Plaintiff has failed to allege a plausible retaliation claim against defendant Plowman. Plaintiff alleges he "attempt[ed] to access the grievance procedure" to address the May 19, 2019 incident; he received threats from unnamed "correctional officers" telling him "this is not over" and he "did that to the wrong lieutenant" and "other [unspecified] statements"; and two months later defendant Plowman filed a false conduct report against plaintiff for discussing the murder of a corrections officer, which resulted in plaintiff's placement in extended restrictive housing. (Doc. 17 at ¶¶ 40-47).  Plaintiff alleges defendant Plowman was motivated to take these actions "because of the content" of plaintiff's protected speech, but he fails to allege sufficient facts giving rise to such an inference.  Plowman's conduct report was filed over two months after the May 19, 2019 incident, and that fact alone does not give rise to an inference of a retaliatory motive by Plowman.  *See Briggs*, 801 F. App'x at 960 (in absence of "extremely close" temporal proximity, Sixth Circuit has been reluctant to find retaliatory motive) (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010)).  Nor do the additional allegations such as "this is not over" made by unknown corrections officers give rise to an inference of a retaliatory motive. Plaintiff does not allege when such statements were allegedly made and by whom, and the context in which such statements were allegedly made.  Finally, plaintiff fails to allege that defendant Plowman had any knowledge of plaintiff's protected activity of attempting to file a grievance.  *See Briggs*, 801 F. App'x at 961 (temporal proximity measured from date defendant learns about protected activity rather than when protected activity occurred) (citing *Mickey v. Zeidler Tool & Die Co*., 516 F.3d 516, 525 (6th Cir. 2008)).  Plaintiff's second amendment complaint fails to allege a plausible claim of First Amendment retaliation against defendant Plowman.  Accordingly, defendant Plowman is entitled to qualified immunity on this claim.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  Defendants' motion for judgment on the pleadings (Doc. 22) be **GRANTED IN PART** and **DENIED IN PART**.  The Court **RECOMMENDS** that defendants' motion for judgment on the pleadings concerning a) plaintiff's Eighth Amendment excessive use of force claim against defendant Smith; b) plaintiff's failure to intervene claim against defendant Bauer; c) plaintiff's supervisory liability claim against defendant Bauer; and d) plaintiff's retaliation claim against defendant Plowman be **GRANTED**.  Defendants' motion for judgment on the pleadings (Doc. 22) should be **DENIED** in all other respects.

Date: 8/3/2022

Karen L. Litkovitz
Chief United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TOMMY MEADOWS,                                    Case No. 1:21-cv-322
     Plaintiff,                                    Cole, J.
                                                  Litkovitz, M.J.

     vs.

CORRECTIONAL OFFICER
C. COPPICK, et al.,
     Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written

objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being

served with a copy thereof.  This period may be extended further by the Court on timely motion

by either side for an extension of time.  Such objections shall specify the portions of the Report

objected to and shall be accompanied by a memorandum of law in support of the objections.  If

the Report and Recommendation is based in whole or in part upon matters occurring on the

record at an oral hearing, the objecting party shall promptly arrange for the transcription of the

record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems

sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another

party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make

objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*,

474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).