**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **Tommy Meadows,** | : | Case No. 1:21-cv-322 |
| | : | |
| Plaintiff, | : | Judge Jeffery P. Hopkins |
| | : | |
| v. | : | |
| | : | Magistrate Judge Litkovitz |
| **Correctional Officer C. Coppick,** *et al.,* | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS, CHRISTOPHER COPPICK, KENNETH PLOWMAN, AND WILLIAM BAUER'S MOTION TO ALTER OR AMEND THE JUDGMENT, PURSUANT TO FED. R. CIV. P. 59(e)**

NOW COME the defendants, Christopher Coppick, Kenneth Plowman, and William Bauer, by and through counsel, and hereby move the Court, pursuant to Fed. R. Civ. P. 59(e), to alter or amend the judgment.

This motion is being filed concurrently with, and further supplements, Defendants' Motion for Judgment as a Matter of Law, wherein Defendants request alternative relief in the form of a new trial. Defendants move on the basis that there is a clear error of law and there is a need to prevent a manifest injustice.

The grounds for this motion are fully described in the memorandum in support set forth below.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ D. Chadd McKitrick*
**D. CHADD MCKITRICK (0073750)**
**SALVATORE MESSINA (0097510)**
Assistant Attorneys General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/FX: (866) 359-3383
Daniel.McKitrick@OhioAGO.gov
Salvatore.Messina@OhioAGO.gov

*Counsel for Defendants*

**MEMORANDUM IN SUPPORT**

**I.     INTRODUCTION**

A jury trial in this civil action commenced September 8, 2025, and continued until September 12, 2025, when the jury entered a verdict in favor of Plaintiff, Tommy Meadows, as to his three claims against the defendants, Christopher Coppick, William Bauer, and Kenneth Plowman. In total, the jury awarded Plaintiff compensatory damages in the amount of $209,000 and punitive damages in the amount of $195,000, amounting to a total damage award of $404,000.

Defendants seek a remittitur, asking that the jury's award of both compensatory and punitive damages be reduced because they are excessive.

When reviewing the evidence admitted at trial in a light most favorable to Plaintiff, the Court should be convinced that the verdict in this matter is either (1) clearly excessive, (2) resulted from passion, bias, or prejudice, or (3) is so excessive as to shock the judicial conscious of the Court. *Wallace v. FedEx Corp.*, 764 F.3d 571, 593 (6th Cir. 2004).

Here, Plaintiff did not proffer evidence to sufficiently support the compensatory or punitive damages awarded against the defendants, these awards are clearly excessive, and it should shock the conscience of the Court as to the amount awarded to Plaintiff by the jury.

In finding Mr. Bauer liable for engaging in excess use of force by quickly disbursing O.C. spray towards Plaintiff in response to his aggressive behavior, the jury awarded Plaintiff $75,000 in compensatory damages and $100,000 in punitive damages. This excessive award was made despite Plaintiff testifying that he suffered no physical injury to his eyes, lungs, or skin other than temporary discomfort.

In finding Mr. Coppick liable for engaging in excess use of force, Plaintiff was awarded $43,000 in compensatory damages and $30,000 in punitive damages. These excessive awards

were made despite Plaintiff only suffering three minor lacerations to his face that required minimal medical attention. No medical evidence was admitted at trial to support Plaintiff suffered any other physical injury or received medical treatment beyond the day of the event, May 19, 2019.

Finally, in finding Mr. Plowman liable for retaliation, the jury excessively awarded Plaintiff $91,000 in compensatory damages and $65,000 in punitive damages. The jury awarded $91,000 in compensatory damages to Plaintiff when he presented no evidence to support Plaintiff suffered an actual injury as a result of the purported retaliation.

In addition to the compensatory awards being excessive, the punitive damages awarded to Plaintiff were inherently shocking and unsupported. There was no evidence whatsoever that the defendants engaged with evil intent to cause harm to Plaintiff and the punitive damages would not serve to deter them from additional unlawful conduct as they are no longer employed as correctional officers.

For these reasons, more fully analyzed herein, the Court should grant the Defendants a remittitur, reducing the jury's award of compensatory and punitive damages, or order a new trial on damages.

**II.     STATEMENT OF FACTS ADMITTED AT TRIAL**

Due to Plaintiff's head striking the wall, the evidence admitted at trial established he incurred three small lacerations to his head. Although the lacerations initially bled, the bleeding had completely stopped by the time Plaintiff was observed by medical personnel in the institution's infirmary. The lacerations were no longer than the width of a finger and only required "butterfly" strips for closure. [Doc. 110, PageID 2061]. Although Plaintiff stated that scars later developed as a result of the lacerations, Plaintiff did not provide evidence that the scars affected him negatively in any other manner. [*Id.*, PageID 2061]. There was no evidence the scars caused any

4

additional subsequent pain to Plaintiff or that he lost employment or affection the affection of others due to the scars.

Plaintiff testified he was discombobulated as a result of his head striking the wall, however, he did not say how long he felt that way in trial. [Doc. 110, PageID 2057]. Plaintiff further testified that he suffered a leg injury due to Mr. Plowman's manipulation of his legs. [*Id.*, PageID 2062]. Separately, Plaintiff further implied without elaboration that his hands and fingers were injured by Mr. Coppick during the escort.

However, Plaintiff's testimony about being dazed and confused, the leg injury, hand and finger injury are contradicted by other evidence admitted at trial.

Handheld video clearly demonstrated Plaintiff was not dazed and confused by his head striking the wall; he even conceded he was able to understand and follow instructions from Lt. Broughton and other medical personnel. In the video, Plaintiff joked with Lt. Broughton and medical personnel. Plaintiff was not confused. He clearly understood the medical treatment proposed by medical personnel and consented to being treated. Plaintiff also thanked the medical personnel for giving him medical treatment. [Doc. 111, PageID 2163 – 2165 and DX-4].

Plaintiff never complained of any brain, leg, hand, or finger injury to medical personnel in the infirmary as demonstrated in the handheld video. To the contrary, when questioned by medical personnel whether he had any injury other than the lacerations, Plaintiff stated, "Not at all. I'm all right. I'm all right." [DX-4 at 9:17]. Nor did Plaintiff present any medical record or testimony demonstrating that he was treated for any head/brain, leg, hand, or finger injury at trial. Indeed, his only medical treatment was given on the day of this event.

5

It is uncontested that Plaintiff suffered temporary discomfort from being exposed to O.C. spray. However, Plaintiff never presented evidence at trial showing he had any specific injury or lasting physical eye, lung, or skin damage as a result of the exposure to the O.C. spray.

Regarding the claim of retaliation, Plaintiff provided no evidence demonstrating he suffered any actual injury stemming from Mr. Plowman's purported retaliation. While Plaintiff claimed his security level was elevated and he was placed in solitary confinement as a result of the Plowman conduct report, the evidence admitted at trial demonstrated otherwise. Plaintiff's security classification was already raised for a period of two years as a result of his conduct on May 19, 2019, when Mr. Plowman issued his conduct report. [Doc. 111, PageID 2177 – 2178]. The evidence did not support Plaintiff's argument that his security level was increased for an indefinite period of time; instead, his security level was reduced in May 2021, i.e., upon the expiration of the two-year duration assigned for his conduct on May 19, 2019. [*Id.*, PageID 2187].

Moreover, Plaintiff had the opportunity to reduce his security level during that two-year period but failed to take advantage of this opportunity. Instead, Plaintiff continued to engage in additional institutional violations prolonging his stay at Level ERH, or Level E. [*Id.*, PageID 2184 – 2185]. Further trial evidence did not demonstrate that he was subject to any harsher conditions that were atypical of what he was already experiencing prior to the issuance of the conduct report by Mr. Plowman. Finally, Plaintiff was not deterred, thwarted, or prevented from exercising his First Amendment right to utilize the grievance system after Mr. Plowman issued the conduct report. Nor did Plaintiff testify that he was prevented from communicating with his loved ones. In short, there was no actual injury to Plaintiff as a result of the conduct report issued by Mr. Plowman.

6

Based on the lack of evidence to support the damages awarded by the jury and other reasons as demonstrated below, the Court should remit the damages awarded by the jury because the damages are clearly excessive and should shock the conscience of the Court as they currently stand.

### III. LAW AND ARGUMENT

#### A. Rule 59(e) and Remittitur Standards.

The Federal Rules of Civil Procedure allow a party to request that a judgment be altered or amended. Fed. R. Civ. P. 59(e). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

Here, Defendants seek to alter or amend the judgment by specifically seeking a remittitur, i.e., asking the Court to reduce the jury's award of both compensatory and punitive damages because they are allegedly excessive. "A remittitur is defined as '[t]he procedural process by which an excessive verdict of the jury is reduced.'" *Hill v. Marshall*, 962 F.2d 1209, 1216 (6th Cir. 1992) (quoting Black's Law Dictionary, 1295 (6th Ed. 1990). When a trial court determines that a damages award should be remitted to a specific amount, the court must provide the plaintiff with "the option of accepting this reduced . . . award or electing a new trial." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007).

"A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced the verdict is clearly excessive; resulted from passion, bias, or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Wallace*, 764 F.3d at 571 (alterations adopted; internal quotation marks

7

omitted). As such, "[a] jury's damages award must stand unless it is (1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Id.* (internal quotation marks omitted).

Due to the reasons discussed below, the Court should remit the compensatory and punitive damages for all three defendants to either $0.00 or alternatively remit the punitive damages to a nominal number for each defendant.

### B. The evidence admitted at trial does not support the compensatory damages award against Defendant Bauer.

The jury awarded Plaintiff $75,000 in compensatory damages and $100,000 in punitive damages for the two short disbursements of O.C. spray by Mr. Bauer. These amounts are clearly beyond any range supportable by proof and so excessive as to shock the conscience of the Court.

At trial, Plaintiff gave only a vague response as to how long the O.C. spray had an effect on him. Plaintiff never testified he suffered any loss of vision or any other difficulty seeing after being exposed to the O.C. spray on May 19, 2019. Nor did Plaintiff testify that he suffered any other long-term negative physical effects stemming from the O.C. spray after May 19, 2019. Plaintiff never sought medical treatment for any issues with his lungs or skin as a result of the exposure to the O.C. spray. Nothing in the trial record supports a discernable physical injury to Plaintiff other than a *de minimis* injury that was temporary in nature. This Court has consistently held that no constitutional violation occurs when there is only evidence of a temporary *de minimis* exposure to chemical agents and no further discernable physical injury. *Miller v. Tyler Par.*, No. 1:21-cv-200, 2023 U.S. Dist. LEXIS 112991, *5, 2023 WL 4275136 (S.D. Ohio June 29, 2023) (Gentry, M.J.) R & R adopted by, *Miller v. Tyler Par.*, 2023 U.S. Dist. LEXIS 123976, 2023 WL 4594757 (S.D. Ohio July 18, 2023) (citing *Bullocks*, 2019 U.S. Dist. LEXIS 86674, 2019 WL 2233095, at *8-9 (collecting cases)).

8

The evidence admitted at trial, viewed in a light most favorable to Plaintiff, failed to show any discernible physical injury other than temporary discomfort as a result of his exposure to O.C. spray. Under the PLRA, an inmate is not entitled to recover damages for emotional distress or pain and suffering for a claim of excessive use of force without suffering a discernable physical injury as a result of the excessive use of force. 42 U.S.C. § 1997e(e); *Pames v. Pierce*, No. 1:12-cv-285, 2014 U.S. Dist. LEXIS 134620, * 9 (S.D. Ohio July 25, 2014) R&R adopted by 2014 U.S. Dist. LEXIS 134613, 2014 WL 4773999 (S.D. Ohio Sept. 24, 2014) (citing *Merch. v. Hawk-Sawyer*, 37 Fed. Appx. 143, 145-46 (6th Cir. 2002) and *Braswell v. Corr. Corp. of Am.*, 419 Fed. Appx. 622, 627 (6th Cir. 2011))

It is further inherently illogical to award damages to Plaintiff for temporary exposure to O.C. spray in an amount that is higher than for damages for small cuts that later allegedly developed into scars. Here, the jury awarded Plaintiff $75,000 for temporary exposure to O.C. spray, while it awarded Plaintiff $43,000 for cuts to his forehead that allegedly developed into scars. When the evidence demonstrates that a purported injury had a lesser effect on a plaintiff than another injury, it is unreasonable to assign a higher amount of damages for that lesser injury.

**C. The evidence admitted at trial does not support the compensatory damage award against Mr. Plowman.**

The jury awarded $91,000 in compensatory damages to Plaintiff despite there being no evidence to support Plaintiff suffered an actual injury as a result of the purported retaliation.

Even though the Sixth Circuit has held that one does not need to suffer a physical injury to recover compensatory damages for a First Amendment violation as mandated under the PLRA, it has held a plaintiff must still "prove actual injury caused by [the First Amendment] violation." *King v. Zamaira*, 788 F.3d 207, 213 (citing *Carey v. Piphus*, 435 U.S. 247, 264 (1978)). "Moreover, 'damages based on the abstract 'value' or 'importance' of constitutional rights are not

9

a permissible element of compensatory damages." *Id.* (quoting *Memphis County Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1978)). An award for a First Amendment violation "'must focus on *the real injury sustained* and not on either the abstract value of the constitutional right at issue . . . or the importance of the right in our system of government.'" *Id.* at 214 (quoting *Piver v. Pender County Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987)).

Again, Plaintiff provided no evidence demonstrating he suffered any actual injury stemming from Mr. Plowman's purported retaliation.

At the outset, Mr. Plowman is entitled to judgment as a matter of law, as discussed in Defendant's Rule 50(b) motion. Mr. Plowman testified he had no inclination anyone was communicating with the Chief Inspector on behalf of Plaintiff. His testimony was clear that he acted independent of any communication by Plaintiff or his then-fiancee, Ms. Smith to complain about the events of May 19, 2019. The jury clearly ignored unrefuted evidence that Mr. Plowman was not motivated by Plaintiff's attempts to complain about the events of May 19, 2019. Instead, the jury drew an inference of motivation on pure innuendo. Nevertheless, assuming *arguendo* there was evidence demonstrating Mr. Plowman was motivated to issue the conduct report in response to Plaintiff's utilization of the grievance system, Plaintiff still did not present evidence of an actual injury caused by the retaliation

While Plaintiff claimed his security level was elevated indefinitely and he was placed in solitary confinement as a result of Mr. Plowman's conduct report, the evidence admitted at trial demonstrated otherwise. Plaintiff's security classification was already raised to Level ERH, or Level E, for a period of two years as a result of his conduct on May 19, 2019, when Mr. Plowman issued his conduct report on August 6, 2019. It was not raised as a result of conduct report issued by Mr. Plowman. [Doc. 111, PageID 2176; 2184; DX-11 at p. 1610 – 1611].

The evidence adduced at trial also did not support Plaintiff's argument that his security level was increased for an indefinite period of time. While it had been recommended that his security classification be raised to Level ERHN, or Level EN, the Bureau of Classification and Reception kept his security classification at Level E, which was assigned due to the May 19, 2019 events. Plaintiff eventually conceded his security level was reduced to ERHT, or Level ET, in May 2021, i.e., upon the expiration of the two-year duration assigned for his institutional violations stemming from May 19, 2019. [Doc. 111, PageID 2187 – 2188]. The August 5, 2019, conduct report did not result in any extension of his high-level security classification.

Plaintiff had the opportunity to reduce his security level during that two-year period but failed to take advantage of this opportunity due to additional institutional violations. [*Id.*, PageID 2184 – 2186; DX-11 at p. 1592]. Further evidence did not demonstrate that he was subject to any harsher conditions that were atypical of what he was already experiencing prior to the issuance of the conduct report by Mr. Plowman. Plaintiff's contention that he suffered pain and suffering as a result of his security classification was further belied by the evidence demonstrating he already suffered from anxiety and depression. Plaintiff additionally acknowledged seeking a voluntary removal from the mental health caseload in October 2019, and there was no medical evidence proffered to discern any emotional distress resulting from the retaliation from any prior existing emotional distress.

Finally, there was no evidence admitted demonstrating Plaintiff was in fact deterred, thwarted, or prevented from exercising his First Amendment right to utilize the grievance system after Mr. Plowman issued the conduct report. Nor did Plaintiff testify that he was prevented from communicating with his loved ones. In short, there was no actual injury to Plaintiff as a result of

11

the conduct report issued by Mr. Plowman. With no actual injury, Plaintiff is not entitled to recover damages for his retaliation claim. *King*, 788 F.3d at 213.

### D. The evidence admitted at trial does not support the compensatory damage award against Mr. Coppick.

In finding Mr. Coppick liable for engaging in excess use of force, Plaintiff was awarded $43,000 in compensatory damages by the jury. In essence, Mr. Meadows was awarded $43,000 for suffering three minor lacerations to his forehead. This is such an excessive and unsupported award that should shock the conscience of the Court.

While Plaintiff's lacerations bled at the time of the incident, as is common with lacerations to the forehead, Plaintiff acknowledged the bleeding stopped prior to being escorted to the infirmary. Plaintiff further testified the lacerations only medically required "butterfly strips" as treatment. Plaintiff did not complain of any other injury to his person to medical personnel. Additionally, Plaintiff admitted he sought no further medical treatment.

While Plaintiff inferred he continues to have small scars on his forehead, he never testified that the scars have affected him in any negative manner. Plaintiff did not testify that the scars caused continued pain or that it affected his opportunities to obtain employment or the affection of others. Nor did Plaintiff testify that he had any emotional distress or pain and suffering as a result of the lacerations.

Plaintiff may argue the award was to further compensate him for purported headaches he suffered thereafter and injuries to his hands, fingers, and leg. Plaintiff was inherently unclear as to any injury to his brain or head from a neurological standpoint and further did not provide expert medical testimony as to any duration for such head or brain injury. This issue is clearly beyond the knowledge of a lay jury. Additionally, there was no medical evidence proffered to support Plaintiff's contention that he suffered any injury to his hands or fingers due to Mr. Coppick. To

12

the contrary, Plaintiff stated to medical personnel, he had no additional injuries to his body other than the cuts to his forehead. [DX-4 at 9:17]. Plaintiff further conceded he did not report injuries to his hands, fingers, and leg, abandoning his duty to mitigate his damages, which was instructed to the jury.

It was also entirely inappropriate to assign any purported injury to Plaintiff's leg, since it was Mr. Plowman, and not Mr. Coppick, that manipulated his leg while on the ground in the J corridor. Mr. Coppick cannot be held liable for a purported injury when he was not personally involved in the conduct proximately causing that injury, which was already decided by the Court.

### E. The compensatory damages awarded to Plaintiff by the jury are clearly excessive when compared to similar verdicts rendered by other juries.

Finally, there are no published verdicts within the Sixth Circuit and other courts that support the excessive compensatory damages awarded in this matter. Other published examples of jury awards for use of force incidents and physical injuries similar to those alleged by Plaintiff will show awards of nominal value.

In *Morrison v. Davis,* 195 F. Supp.2d 1019 (S.D. Ohio 2001) a jury awarded the plaintiff only $12,000.00 in compensatory damages (plus an additional $3,000.00 in punitive damages) for injuries suffered after having been beaten by two correction officers. In another action, i.e., *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001), a Missouri jury awarded only nominal damages in the amount of $1.00 after the plaintiff was sprayed directly in the face with a chemical agent and refused medical treatment thereafter. In *Cooper v. Morales*, 535 Fed. Appx. 425 (5th Cir. 2013), the jury only awarded $30.00 in compensatory damages and $3,500.00 in punitive damages upon finding an officer liable in slamming the plaintiff to the ground, fracturing his ribs and dislocating his elbow. Another jury in Texas awarded only $10,000.00 in compensatory damages and $4,000.00 in punitive damages after the plaintiff was held down and beaten by correction officers,

later stomped on, and sprayed with mace. *Cowart v. Erwin*, 837 F.3d 444 (5th Cir. 2016).

The compensatory damages awarded to Plaintiff for the alleged retaliation is also plainly excessive in comparison with other jury awards for acts of retaliation. In *Royal v. Kautzky*, 375 F.3d 720 (8th Cir. 2004), an Iowa jury awarded nominal damages of $1.00 for the plaintiff's placement in segregation for sixty days as retaliation for utilizing the inmate grievance system to complain about his medical care. In *King v. Zamaira*, 788 F.3d 207 (6th Cir. 2015), the plaintiff was only awarded $1,475.00 after being transferred to a higher security institution as retaliation for complaining about the inmate grievance system. The award amounted to approximately $5.00 a day for each day the plaintiff was held in a higher security institution. A Tennessee District Court awarded a plaintiff only $1,776.00 as compensation for being transferred to another institution as a form of retaliation. *Parnell v. Fitz*, 640 F. Supp.3d 819 (W.D. Tenn 2022).

The amounts of damages awarded in these comparable matters shows the jury awarded clearly excessive damages. Because this jury's awards were way beyond the range of comparable cases, the Court should find the damages awarded in this matter to be excessive and in an amount that shocks the conscience of the Court.

**F. The punitive damages awarded by the jury is not supported under the Fifth Amendment's right to due process.**

"[T]he Fifth Amendment's Due Process Clause 'prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor.'" *Kidis v. Reid*, 976 F.3d 708, 715 (quoting *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (citations omitted)). "[Before a punitive damages award may issue, one must have received 'fair notice' both of what conduct is prohibited as well as 'severity of the penalty that a State may impose.'" *Id.* (citing *State Farm*, 538 U.S. at 517).

The Sixth Circuit utilizes three guideposts to determine whether a punitive damages award satisfies due process. These elements include: "'(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.'" *Id.* (quoting *State Farm*, 538 U.S. at 418). *See also*, *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

In evaluating the reprehensibility of the conduct, the Supreme Court instructs courts to consider whether: "the harm was physical rather than purely economic; the tortious conduct evinced an 'indifference to or a reckless disregard of the health or safety of others'; 'the conduct involved repeated actions or was an isolated incident'; and the harm resulted from 'intentional malice, trickery, or deceit, or mere accident. *Id.* at 716 (quoting *State Farm*, 538 U.S. at 419).

This was plainly an isolated incident involving Defendants and there was no testimony presented that Defendants would engage in similar conduct in the future. In fact, testimony presented at trial demonstrated that none of the Defendants are employed as a correction officer. Thus, the punitive damages awarded clearly will not deter future conduct of Defendants.

Furthermore, there was no evidence that any Defendant engaged with evil intent or intentional malice to cause harm to Plaintiff, which is required when awarding punitive damages. *King*, 788 F.3d at 216 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

In regard to the punitive damages awarded against Mr. Coppick, Plaintiff admitted to initiating an inmate fight. He was further involved in removing a physical participant of the fight who was his friend and further disobeying orders. During his escort, Plaintiff was non-compliant by planting his feet and turning toward Mr. Coppick. When the men approached the gate to enter

15

the J corridor Plaintiff plainly turned in the direction of Mr. Coppick, and aware that other high-security inmates were nearby, Mr. Coppick attempted to regain control of Plaintiff. There was nothing malicious or evil about Mr. Coppick's conduct whatsoever on May 19, 2019, to serve as a basis for awarding punitive damages against him. At most, Mr. Coppick was negligent, or reckless, in the amount of force he used to regain control over Plaintiff, but the negligent or reckless use of force does not rise to the level of being an Eighth Amendment violation. *Johnson v. Sootsman*, 79 F.4th 608, 621 (6th Cir. 2023).

As to Plaintiff's claim against Mr. Bauer, there was no evidence to support Mr. Bauer had a malicious or evil intent to cause Plaintiff physical harm. Mr. Bauer saw Plaintiff acting belligerent and aggressive and explicitly believed Plaintiff spat at him. To regain order during a mass movement of prisoners and allow for the processing of other inmates involved in the fight, Mr. Bauer disbursed the O.C. spray for a short two seconds. When Mr. Bauer later returned to inquire whether Plaintiff was ready to be processed, Plaintiff's behavior escalated again, causing Mr. Bauer to give another short two-second disbursement of O.C. spray. Plaintiff later acknowledged his recalcitrant behavior by asking Lt. Broughton to tell Mr. Bauer "that wasn't directed at him." [Doc. 111, PageID 2202]. Plaintiff agreed that spit and blood could have left his person. [*Id.*, PageID 2214]. Plaintiff further acknowledged at trial signing a statement that said, "I did spit blood." [*Id.*, PageID 2160]. There was nothing malicious or evil about Mr. Bauer's conduct whatsoever on May 19, 2019, to serve as a basis for awarding punitive damages against him.

As to Plaintiff's claim of retaliation, there was no direct or circumstantial evidence connecting Mr. Plowman to Plaintiff's utilization of the inmate grievance system to even suggest he retaliated against Plaintiff. Instead, the jury only heard evidence of innuendo and general,

16

unsupported suggestion that he was motivated by Plaintiff's utilization of the grievance system to issue a conduct report. The unrefuted evidence showed Mr. Plowman had no knowledge whatsoever that Plaintiff was utilizing the grievance system to complain about the events of May 19, 2019. Furthermore, Mr. Plowman explicitly testified he did not know of Ms. Smith's communications to the Chief Inspector's Office. There was no direct or circumstantial evidence that Mr. Plowman was motivated in any way to issue the conduct report as a result of Plaintiff's utilization of the inmate grievance system. There was no direct or circumstantial evidence that Mr. Plowman was motivated to issue the conduct report as a result of Ms. Smith's communications with the Chief Inspector. Instead, the evidence showed Mr. Plowman issued the conduct report only because he believed Plaintiff violated institutional rules on July 31, 2019 and for no other reason. Without any retaliatory motivation, a jury cannot find malicious or evil intent to award punitive damages.

    Defendants aver that none of them had due notice that their conduct was in violation of a clearly established constitutional right as discussed in Defendants' Rule 50(b) motion for judgment as a matter of law and as a result are entitled to qualified immunity. Without knowing they were violating the law, they logically could not have been acting with a malicious or evil intent to harm Plaintiff.

    There is further disparity between the actual harm and injury suffered by Plaintiff and the amount of punitive damages awarded by the jury as discussed herein. As discussed in addressing the compensatory damages, Plaintiff's actual injuries are *de minimis*, if an actual injury at all. Because the Court should remit the compensatory damages for this reason, the Court should remit the punitive damages awarded by the jury as well.

Finally, punitive damages awarded by other juries do not support the award of punitive damages against Defendants in this matter. In reviewing the punitive damages referenced by the Sixth Circuit in *Kidis*, 976 F.3d at 717, the Court should see that the punitive damages awarded by the jury are clearly excessive.

The punitive damages awarded by the jury in this matter are grossly excessive in light of these factors the Court must consider under *Kidis*. Due to the reasons discussed herein, the Court should remit the punitive damages for all three defendants to either $0.00 or alternatively remit the punitive damages to a nominal number for each defendant.

## IV. CONCLUSION

Based on the facts and reasoning discussed herein, the Court should alter or amend the judgment and remit both the compensatory and punitive damages awarded in this matter. Due to the reasons discussed herein, the Court should remit both the compensatory and punitive damages for all three defendants to either $0.00 or alternatively remit the punitive damages to a nominal number for each defendant. The compensatory and punitive damages awarded by the jury are clearly excessive so as to shock the conscious of the Court.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ D. Chadd McKitrick*
**D. CHADD MCKITRICK (0073750)**
**SALVATORE MESSINA (0097510)**
Senior Assistant Attorney General
Criminal Justice Section
Corrections Litigation Unit
30 E. Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/FX: (866) 359-3383
Daniel.McKitrick@OhioAGO.gov
Salvatore.Messina@OhioAGO.gov

*Counsel for Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, a copy of the foregoing *Defendants' Motion to Alter or Amend the Judgment* was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ D. Chadd McKitrick*
D. CHADD McKITRICK (0073750)
Senior Assistant Attorney General

*Counsel for Defendants*