**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TOMMY MEADOWS,<br><br>*Plaintiff*,<br><br>v.<br><br>CORRECTIONAL OFFICER C. COPPICK, *et al.*,<br><br>*Defendants*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 1:21-cv-322<br><br>Judge Jeffery P. Hopkins |

**OPINION AND ORDER**

Plaintiff Tommy Meadows ("Plaintiff" or "Meadows"), an inmate at the Southern Ohio Correctional Facility, initiated this prisoner civil rights action under 42 U.S.C. § 1983. Three of his claims survived summary judgment: (1) an Eighth Amendment excessive force claim against Defendant Christopher Coppick ("Coppick"), (2) an Eighth Amendment excessive force claim against Defendant William Bauer ("Bauer"), and (3) a First Amendment retaliation claim against Defendant Kenneth Plowman ("Plowman") (collectively, "Defendants"). Doc. 73-1. The case proceeded to a trial by jury on September 8, 2025.

After a five-day trial, a duly empaneled jury rendered a verdict in favor of Meadows on each claim. As to the first claim, the jury determined that Meadows had proven by a preponderance of the evidence that Coppick used excessive force against Meadows in violation of the Eighth Amendment and awarded Meadows $43,000 in compensatory damages and $30,000 in punitive damages. Doc. 107, PageID 1688–91, 1700. The jury rendered a similar verdict as to the second claim, finding that Bauer used excessive force against Meadows in violation of the Eighth Amendment. *Id.* at PageID 1692–95. The jury

awarded Meadows $75,000 in compensatory damages and $100,000 in punitive damages for his claim against Bauer. *Id.* at PageID 1693, 1701. For his third claim, the jury found that Meadows had proven by a preponderance of the evidence that Plowman retaliated against Meadows in violation of the First Amendment and awarded $91,000 in compensatory damages and $65,000 in punitive damages. *Id.* at PageID 1696–99, 1702.

Meadows and Defendants have both filed post-trial motions. The following are pending before the Court: (1) Defendants' Motion for Judgment as a Matter of Law (Doc. 114) (the "Rule 50(b) Motion"), (2) Defendants' Motion to Alter or Amend the Judgment (Doc. 115) (the "Rule 59(e) Motion"), (3) Plaintiff's Motion for Attorneys' Fees, Costs, and Prejudgment Interest (Doc. 116) (the "Fee Motion"), and (4) Defendants' Motion to Stay Briefing on Plaintiff's Fee Motion (Doc. 123) (the "Stay Motion"). Plaintiff also recently filed a Motion to Grant Unopposed Motion for Attorneys' Fees, Costs, and Prejudgment Interest (Doc. 128) (the "Follow-Up Motion"). All Defendants' Motions—the Rule 50(b) Motion, the Rule 59(e) Motion, and the Stay Motion—are ripe for determination.

For the reasons stated below, Defendants' Rule 50(b) Motion is **GRANTED IN PART** and **DENIED IN PART**, Defendants' Rule 59(e) Motion is **DENIED IN PART** and otherwise **DENIED AS MOOT**, Plaintiff's Fee Motion is **DENIED WITHOUT PREJUDICE**, and Defendants' Stay Motion and Plaintiff's Follow-Up Motion are **DENIED AS MOOT.**

## I. LAW AND ANALYSIS

### A. The Rule 50(b) Motion

As they did at trial, Defendants renew their motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure. Doc. 114, PageID 2494. In the Rule

50(b) Motion, Defendants assert that, when viewed in a light most favorable to Meadows, the evidence admitted at trial does not establish an Eighth Amendment excessive force claim against Bauer or against Coppick, nor a First Amendment retaliation claim against Plowman. Defendants also argue that they are entitled to qualified immunity. Defendants request, in the alternative, that they be granted a new trial on all of Meadows' claims under Rule 59(a). *Id.* Meadows rejects each of these arguments and opposes Defendants' alternative request for a new trial. Doc. 118.

**1. Standard of Review**

A party may elect to renew a motion for judgment as a matter of law after trial under Rule 50(b) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 50(b). *See also Hanover Am. Ins. Co. v. Tattooed Millionaire Entm't, LLC*, 974 F.3d 767, 779 (6th Cir. 2020) (explaining that "[t]he term 'motion for judgment as a matter of law'" under the rule "amalgamates the old terms 'directed verdict' and 'verdict JNOV.'" (citing *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996)). Rule 50(b) provides:

> RENEWING THE MOTION AFTER TRIAL; ALTERNATIVE MOTION FOR A NEW TRIAL. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).

A motion for a judgment as a matter of law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (citing *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001)). In deciding such a motion, the court is not permitted to "weigh the evidence, pass on the credibility of witnesses, or substitute [its] judgment for that of the jury." *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citing *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010)); *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). The court shall only grant judgment as a matter of law "if a complete absence of proof exists on a material issue in the action, or if no disputed issue of fact exists on which reasonable minds could differ." *LaPerriere v. Int'l Union UAW*, 348 F.3d 127, 132 (6th Cir. 2003).

**2. Excessive Force**

The Court turns first to Meadows' excessive force claims against Bauer and Coppick. The Supreme Court has held that even a convicted inmate, like Meadows, has the right to be free from the use of excessive force by prison officials under the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Excessive force claims under the Eighth Amendment have two components: a subjective component that focuses on the prison official's state of mind and an objective component that analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)); *see also Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023).

To succeed on the subjective component under the two-prong test, the prisoner must demonstrate malicious intent by the prison official. *Williams*, 631 F.3d at 383. The key inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). To that end, the court considers "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Williams*, 631 F.3d at 383 (quoting *Whitley*, 475 U.S. at 321). As for the second prong—the objective component—the inmate must objectively show that the pain inflicted by a prison official was "sufficiently serious" to violate "contemporary standards of decency." *Id.* "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9. But at the same time, "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.*

**i. Bauer**

Bauer contends that Meadows failed to admit evidence at trial that supports both the objective and subjective components of his excessive force claim.

The Court will start with the subjective component. In regard to this inquiry, Bauer contends the evidence shows that Bauer applied force in a good-faith effort to restore discipline, not maliciously and sadistically to cause harm. Doc. 114, PageID 2514–16. Meadows counters that Bauer's position relies on a version of the facts that the jury rejected. Doc. 118, PageID 2624. Based on the evidence presented a trial, a reasonable jury could have found that Bauer applied force to maliciously and sadistically cause harm. The video evidence shows Bauer first spraying Meadows with O.C. spray immediately after corrections officers

placed a handcuffed and shackled Meadows in the strip cage. PX-4; PX-5. Following that action, Bauer backed away from the hallway where the strip cage was located and left the area. Bauer then returned, several minutes later, only to spray Meadows again, while Meadows remained handcuffed and shackled in the strip cage. *Id.* Bauer's position now, as it was at trial, is that he sprayed Meadows with O.C. spray because Meadows spat blood at Bauer. Doc. 114, PageID 2515. But Bauer ignores the conflicting evidence presented at trial upon which a reasonable jury could have found that Bauer sprayed Meadows unprovoked. Meadows testified that he did not spit on Bauer and the video evidence offered by the parties is inconclusive on this point. *See, e.g.*, Tr., Doc. 110, 2-196:15–24; PX-4; PX-5.

In this posture, this Court cannot weigh the evidence or pass on the credibility of witnesses. *New Breed Logistics*, 783 F.3d at 1065. Bauer's assertions would require the Court to do just that. Thus, Bauer's arguments as to the subjective component must be rejected.

Turning then to the objective component, Bauer asserts that the evidence does not show that Meadows suffered more than de minimis injury. Doc. 114, PageID 2513. Time and again, the Sixth Circuit has acknowledged that "the Eighth Amendment can reach minor injuries caused by significant force." *Johnson*, 79 F.4th at 616. Yet it does not extend "to '*de minimis* uses of physical force' so long as this force does not repulse 'the conscience of mankind.'" *Id.* (quoting *Hudson*, 503 U.S. at 9–10). Against that backdrop, the Sixth Circuit recently reiterated that it has "generally placed pepper-spray injuries on the *de minimis* side of the line." *Julick v. Jordan*, No. 25-5667, 2026 WL 2455146, at *5 (6th Cir. Aug. 21, 2026) (collecting cases) (emphasis added). For example, in *Julick*, the Sixth Circuit deemed the prisoner's pepper-spray injuries de minimis because the prisoner was laughing and smiling while sprayed, "did not 'show signs of distress' or 'vocalize any pain'", and was able to get

washed off with water. *Id.* This aligns with the Circuit's previous decision in *Jennings v. Mitchell*, 93 F. App'x 723 (6th Cir. 2004) where the court found no more than a de minimis injury where the plaintiff showed no signs of "respiratory distress of any sort" and "merely was uncomfortable in the ordinary fashion of persons exposed to pepper spray." *Id*. at 725.

At trial, Meadows testified to the effects of the O.C. spray. Meadows equated being sprayed to "a slight moment in hell" and said that it caused burning to eyes and skin that made him feel like he was "on fire." Tr., Doc. 110, at 2-194:18–23; 2-195:23. Meadows testified the burning continued "all the way" to the medical unit and that he continued to feel burning "for days." *Id.* at 2-195:2–5. But as in *Julick*, Bauer presented evidence that Meadows had an opportunity to rinse the O.C. spray off his eyes and face. *See* DX-4. While Meadows testified that "*For a moment*, you think you're going to die, because it takes your breath away," *see* Tr., Doc. 110, 2-194:21–22 (emphasis added), this is the sort of "temporary discomfort," *Julick*, 2026 WL 2455146, at *5, that does not reach the level of a "sufficiently serious" injury that is required under the objective prong, *Cordell*, 759 F.3d at 580. The parties also presented video evidence at trial. The video evidence showed that immediately after being sprayed, Meadows was able to talk with Lt. Broughton and others. *See* DX-4. He did not vocalize that he was experiencing pain or distress when talking with Lt. Broughton. *Id*. Though he may have shown signs of discomfort "in the ordinary fashion of persons exposed to [O.C.] spray," Meadows was able to walk to the medical unit and did not testify to any lasting vision or other physical effects. *Id.*; *see also Jennings*, 93 F. App'x at 725. Without weighing the evidence or credibility of witnesses, and drawing all required inferences in Meadows' favor, no reasonable jury could find that Meadows suffered more than de minimis injury.

Meadows also cites to "long-term mental-health injuries" that he endured as a result of Bauer's actions. Doc. 118, PageID 2621. But since no reasonable jury could find that Meadows has suffered more than de minimis injury as a result of Bauer's actions, he cannot recover solely for mental or emotional injury. *Jennings*, 93 F. App'x at 725 (citing 42 U.S.C. § 1997e(e); *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999)).

Accordingly, Bauer is entitled to judgment as a matter of law under Rule 50(b). *See generally Jackson v. Morgan*, 19 F. App'x 97, 102–03 (4th Cir. 2001) (reversing jury verdict and district court's denial of judgment as a matter of law where the plaintiff showed no more than de minimis injury under the objective prong for Eighth Amendment excessive force claim).

**ii. Coppick**

Coppick asserts that he is entitled to judgment because the evidence offered at trial shows that he used the least amount of force necessary to maintain control of an aggressive and non-compliant Meadows and that Meadows' injuries "were *de minimis* at best." Doc. 114, PageID 2525–28. When considering Coppick's assertions, the Court is reminded that Coppick is entitled to judgment "only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for [Meadows]." *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009) (quoting *Pouillon v. City of Owosso*, 206 F.3d 711, 719 (6th Cir. 2000)) (cleaned up). Based on the evidence offered at trial, a reasonable jury could have found that Coppick acted maliciously and sadistically to cause harm to Meadows and that the pain Coppick inflicted on him was sufficiently serious.

As to the subjective component, the evidence, when viewed in a light most favorable to Meadows, shows Coppick forcefully slamming Meadows' head into a concrete block wall after Meadows appeared to be complying as Coppick escorted a handcuffed Meadows toward

the sallyport gate. PX-4. Meadows testified that Coppick had been manipulating his fingers and hand in a painful manner just prior to being slammed into the wall. Tr., Doc. 110, 2-225, 2–6. Video evidence also shows Coppick, along with other corrections officers, taking Meadows to the ground and a reasonable jury could find that during that takedown, Coppick slammed Meadows head against the floor, at least once. PX-4. Though Coppick asserts that his actions were necessary "to obtain control" over Meadows and amounted to "reasonable force" when Meadows head "coincidentally struck the wall," *see* Doc. 114, PageID 2526, the Court agrees with Meadows that a reasonable jury could, and apparently did find, based on the testimony and video evidence presented at trial, that Coppick applied force to maliciously and sadistically cause harm, and not to restore discipline over a seemingly-compliant and handcuffed Meadows.

Consider then, the objective component. Unlike Bauer, a reasonable jury could find that the injuries Meadows suffered as a result of Coppick's actions were sufficiently serious. Though Coppick attempts to frame Meadows' injuries as de minimis, the video evidence shows that Meadows suffered lacerations to his face and head as a result of Coppick's use of force. In fact, Meadows was bleeding so profusely that it was visible on the wall after Meadows had been pushed against it. PX-4. Video evidence from the medical unit also revealed Meadows, with a face covered with blood, before he was cleaned and treated. DX-4. Lacerations that required medical treatment were visible on his face. *Id.* Under these facts, a reasonable jury could further find that the pain inflicted by Coppick was "sufficiently serious" to violate "contemporary standards of decency." *Williams*, 631 F.3d at 383 (citation omitted); *see also Erickson v. Gogebic Cnty.*, 133 F.4th 703, 710 (discussing the line between actionable force and de minimis force, the Sixth Circuit explained it has "held that an officer

used actionable force when he rammed an inmate's head into a concrete wall, putting a large gash above his eye that required a hospital visit." (citing *Cordell*, 759 F.3d at 577–79)).

Coppick also asserts that he is entitled to qualified immunity. Having determined that Coppick violated a constitutional right, the Court must decide whether the evidence produced at trial, when viewed in a light most favorable to Meadows, shows that right was clearly established. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). Coppick attempts to persuade this Court that this case is materially distinguishable from *Cordell*. The defendant in *Erickson*, another Eighth Amendment excessive force case before the Sixth Circuit, attempted to do the same. There, the Circuit described *Cordell* in this context:

> [In *Cordell*], an inmate spoke to an officer in a disrespectful manner after the officer refused to sign him up for a haircut. *See Cordell*, 759 F.3d at 576–77. The officer decided to take the inmate to a holding cell in response. *Id*. at 577. He handcuffed the inmate and led him toward the cell in an escort position. *Id*. En route, the inmate allegedly "tensed up" and turned toward the officer in an apparent act of disobedience. *Id*. at 578, 581–82. According to the inmate, the officer retaliated by running him into a wall and putting a gash in his forehead. *Id*. at 577–78. When accepting the facts in the light most favorable to the inmate, we held that a jury could find that the officer harmed the inmate with "a malicious and sadistic" intent rather than for any safety reason. *Id*. at 584. And we found the force more than *de minimis*. *See id*. at 585-87.

*Erickson*, 133 F.4th at 711. Viewed in a light most favorable to Meadows, the evidence presented, like the evidence offered in *Cordell* and *Erickson*, shows that Meadows engaged in modest, if any, noncompliance before Coppick slammed Meadows' head against the concrete wall. *Id.* ("Like the inmate's version of events in *Cordell*, the video here reveals that Erickson engaged in modest noncompliance and that Voit responded with substantial force.").

This Court is not persuaded by Coppick's attempts to compare this case to *Griffin v. Hardrick*, 604 F.3d 949 (6th Cir. 2010). The plaintiff in *Griffin*, who was not handcuffed, "had been engaged in a loud, lengthy, and animated conversation" and was "struggling" in a

manner that provided the defendant with "a reasonable basis to believe that force would be necessary to control [the plaintiff]." *Id.* at 955. Here, however, there is minimal, if any, evidence that shows Meadows was struggling with Coppick just before Coppick slammed him against the concrete wall and video evidence, viewed in favor of Meadows, shows that Coppick had control over a handcuffed Meadows at the time that force occurred. PX-4. Thus, while this case is distinguishable from *Griffin*, it is not distinguishable from *Cordell*, meaning that the right was clearly established based on the evidence presented at trial. Coppick is not entitled to qualified immunity, nor judgment as a matter of law.

**3. Retaliation**

Plowman argues that he is entitled to judgment as a matter of law because the evidence admitted at trial does not establish a First Amendment retaliation claim against him. To establish a First Amendment retaliation claim, a plaintiff must satisfy three elements:

> (1) that he engaged in protected conduct, (2) that an adverse action was taken against him that would "deter a person of ordinary firmness from continuing to engage in that conduct," and (3) that the adverse action was motivated by the protected conduct.

*Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). Plowman does not contest that Meadows satisfied the first two elements at trial—that he engaged in protected conduct and that the requisite adverse action was taken against him. Doc. 114, PageID 2521. Instead, Plowman asserts that the evidence admitted at trial does not demonstrate "a causal connection between [Meadows'] protected conduct and the purported adverse action of [Plowman]." *Id.*

The Sixth Circuit has framed causation as a two-part inquiry. *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012). To meet this two-part inquiry, a plaintiff must demonstrate: "(1) that the adverse action was proximately caused by an individual defendant's acts," *id.*

(citing *Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005)), and "(2) that the individual taking those acts was 'motivated in substantial part by a desire to punish an individual for exercise of a constitutional right,'" *id.* (quoting *Thaddeus-X*, 175 F.3d at 386).

At trial, Meadows offered evidence that, he argues, established extremely close temporal proximity that permitted an inference of retaliatory motive as to Plowman. Relying on the Sixth Circuit's decision in *Holzemer v. City of Memphis*, 621 F.3d 512 (6th Cir. 2010), Plowman takes the position that Meadows cannot satisfy causation based on a "circumstantial temporal proximity" without any "other evidence to further explain or corroborate [Plowman's] alleged motive in issuing the conduct report." Doc. 114, PageID 2521. But this is not an accurate summation of *Holzemer* or more recent Sixth Circuit precedent. In *Holzemer*, the Sixth Circuit stated that "often evidence in addition to temporal proximity is required to permit the inference," but *not always*—especially in cases with "extremely close temporal proximity." *Holzemer*, 612 F.3d at 526 (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010)). More recently in *King*, the Circuit explained it has "previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive" because "[m]otive is often very difficult to prove with direct evidence" and "[c]ircumstantial evidence may therefore acceptably be the only means of establishing the connection between a defendant's actions and the plaintiff's protected conduct." *King*, 680 F.3d at 695 (citing *Paige v. Coyner*, 614 F.3d 273, 282–83 (6th Cir. 2010); *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)).

A reasonable jury could have found based on the evidence presented at trial that Meadows established "extremely close temporal proximity." *Holzemer*, 612 F.3d at 526. At trial, Meadows and his wife Madeline Smith testified that Meadows had made several

unsuccessful attempts to file a grievance in relation to the excessive force incident on May 19, 2019. Tr., Doc. 111, 3-133:16–25; PX-53. Meadows offered evidence at trial in the form of email exchanges showing that, following intervention by Smith, Meadows was finally granted permission on July 29, 2019 to file a belated grievance for that incident by August 5, 2019. PX-53. The jury heard Smith testify that she visited Meadows in person only two days later, on July 31, 2019, during which time she advised Meadows that he had been granted an extension until August 5, 2019 to file a grievance and about the legal advice that she had received from an attorney she consulted in regard to the grievance issue. Tr., Doc. 111, 3-154:1–12. But Meadows did not make it back to his cell after his visit with Smith. The jury heard that he was taken straight from his visit with Smith to a "slammer" cell in the "area of the prison where they execute people" because he had been accused of plotting to kill a female corrections officer—an accusation he strenuously denied. Tr., Doc. 110, 2-217:15–25; 2-218:23–25. Meadows was ultimately able to file a formal grievance before the extended deadline.

Now turn to Plowman's testimony. On the very same day that Smith visited Meadows and Meadows learned of his extension to file grievances related to the excessive force incident, Plowman claims he overheard Meadows and another inmate discussing a plan to murder a female corrections officer. *Id.* at 2-146:23–2-147:6. He testified that he reported this to a supervisor and submitted an incident report on July 31, 2019. *Id.* at 2-149:11–13. That incident report, however, was not produced at trial and Plowman testified that he had "no idea what happened to it." *Id.* 2-149:14–2:150:1. Plowman told the jury that he then learned that he was supposed to file a conduct report as opposed to an incident report. *Id.* He did not submit that conduct report until August 6, 2019, which was just after Meadows elected to file his formal

grievance related to the May excessive force incident. *Id.* Nonetheless, Plowman, who was present for the May 19, 2019 excessive force incident, stated he did not know about Meadows' attempts to file a grievance for that incident and that he would have reported Meadows even if he had known about Meadows grievance intentions. *Id.* at 2-176:1–22. As a result of Plowman's report, Meadows was sentenced to two years in restrictive housing. *Id.* at 229:9–12.

Considering the totality of the evidence, a reasonable jury could find that Meadows proved causation based on "extremely close temporal proximity." *Holzemer*, 612 F.3d at 526. The Sixth Circuit has observed that when the time gap between the protected activity and alleged retaliation is several months, temporal proximity alone is not enough to establish causation. *Lemaster v. Lawrence Cnty.,* 65 F.4th 302, 310 (6th Cir. 2023); *see also Tamm v. Nerad*, No. 24-1155, 2025 WL 2674302, at *6 (6th Cir. Sept. 18, 2025). That said, the Sixth Circuit reasoned that "if the act occurs within 'days or weeks' . . . the close proximity can sometimes (if rarely) permit an inference that the one motivated the other." *Lemaster*, 65 F.4th at 310. Here, the events occurred over the course of only a few days. And the evidence produced at trial demonstrated that Plowman reported Meadows on the very day that Meadows met with Smith and learned that he could file a belated grievance related to the May 2019 excessive force incident and that Plowman submitted a formal conduct report only after Meadows filed his formal grievance. Coincidence, perhaps; extremely close temporal proximity, for certain. Additionally, although Plowman testified that he would have taken the same action regardless of whether he knew Meadows had been attempting to file a grievance, this Court cannot weigh the evidence or pass on the credibility of witnesses at this stage. *Spengler*, 615 F.3d at 489. Thus, the Court cannot find a "complete absence of fact to support the verdict, so that

no reasonable juror could have found for [Meadows]" on this claim. *Lowery*, 586 F.3d at 432 (quoting *Pouillon*, 206 F.3d at 719 (cleaned up)).

Plowman also asserts he is entitled to qualified immunity on the basis that Meadows failed to demonstrate that Plowman engaged in a constitutional violation.[1] Doc. 114, PageID 2525. But because a reasonable jury could have found based on the evidence that Meadows established all three elements of a First Amendment retaliation claim—the first two of which Plowman concedes (Doc. 114, PageID 2521)—and the latter of which rests squarely upon evidence showing that the retaliation occurred in such extremely close temporal proximity as to prove causation, that argument must be rejected. Plowman has not sought qualified immunity on any other ground. Accordingly, Plowman is not entitled to qualified immunity, nor judgment as a matter of law.

**4. Request for New Trial**

As alternative relief, Defendants request that they be granted a new trial under Rule 59 of the Federal Rules of Civil Procedure. Doc. 114, PageID 2530. Rule 59(a) provides that a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). This is not the most straightforward rule. So what does it mean? The Sixth Circuit explained that

> [C]ourts have interpreted this language to mean that a new trial is warranted when a jury has reached a "seriously erroneous result" as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being

---

[1] It is not clear that Plowman preserved this issue for his Rule 50(b) Motion. A post-trial motion for judgment as a matter of law "is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury." *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997); *see also* Fed. R. Civ. P. 50(b) (permitting a party to "renew" an earlier "request for judgment as a matter of law"). At trial, Defendants' counsel stated that he wanted to "make a brief qualified immunity argument as to all of the claims, particularly the excessive force claims." Tr., Doc. 111, 3-173: 6–7. Counsel did not state the "specific grounds" for why Plowman was entitled to qualified immunity and limited his argument solely to the excessive force claims asserted against Bauer and Coppick. In any event, regardless of whether this argument was adequately advanced under Rule 50(a), Plowman is not entitled to qualified immunity.

> excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias.

*Holmes v. City of Massillon,* 78 F.3d 1041, 1045–46 (6th Cir. 1996) (citations omitted). Defendants argue that they are entitled to a new trial because the verdict is against the weight of the evidence and the damages are excessive. Defendants also assert that if the Court finds some, but not all, Defendants are entitled to judgment under Rule 50(b), then the Court should award any remaining Defendants a new trial because there is no doubt "the jury was influenced to award Plaintiff excessive damages based on a theory that all [of them] acted in concert against Plaintiff to violate his constitutional rights." Doc. 114, PageID 2532.

Defendants' request for a new trial on these grounds is not well taken. Contrary to Defendants' position, the verdict is not against the weight of the evidence. "[A] jury's verdict should not be overturned as being against the weight of the evidence unless that verdict was unreasonable." *Holmes*, 78 F.3d at 1047. As discussed above, this Court has determined that a reasonable jury could have rendered a verdict for Meadows on his claims against Coppick and Plowman. Thus, by accepting Meadows' version of the facts, as the jury must have done, it is not unreasonable to conclude that Coppick's use of force was excessive, nor that Plowman retaliated against Meadows. The verdict cannot be considered unreasonable merely because the jury could have drawn different inferences or conclusions. *J.C. Wyckoff & Assoc., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1487 (6th Cir. 1991). Additionally, as explained below in relation to Defendants' Rule 59(e) Motion, the damages awarded on the claims against Coppick and Plowman are not excessive.[2]

---

[2] Defendants incorporated by reference "the facts and argument submitted in [its] separate Rule 59(e) Motion," *see* Doc. 114, PageID 2531, thus the Court finds it reasonable to address the issue of damages when resolving that motion.

Next, Coppick and Plowman are not entitled to a new trial as a result of judgment being entered in favor of Bauer. Without any evidence or legal support, Defendants assert that absent "any piece of [Meadows'] larger puzzle, it is more likely than not that the jury would not have awarded such a high number in damages with respect to other defendants." Doc. 114, PageID 2532. The Court is not persuaded that Coppick and Plowman should be entitled to a new trial based purely on Defendants' speculation that lesser damages would have been awarded to Meadows absent judgment against Bauer. It is improper to assume, absent evidence to the contrary, that the jury was incapable of parsing out the evidence against each of the defendants when rendering the verdicts and damage awards. *Holmes*, 78 F.3d at 1046. "Indeed, in light of the fact that we often presume juries are capable of distinguishing evidence relating to separate defendants in multi-count multi-defendant drug conspiracy cases, it would be disingenuous for us to assume that a jury in this case was unable to distinguish the evidence relating to the different claims." *Id.* The request is denied.

**B. The Rule 59(e) Motion**

Now consider Defendants' Rule 59(e) Motion, where Defendants seek to alter or amend the judgment by way of a remittitur of compensatory and punitive damages. Doc. 115, PageID 2540–41. They specifically ask this Court to reduce the jury's award of both compensatory and punitive damages because, according to Defendants, the damages are excessive. *Id.* Meadows counters that Defendants are not entitled to remittitur. Doc. 118, PageID 2637. To recap, the jury awarded Meadows $43,000 in compensatory damages and $30,000 in punitive damages for his Eighth Amendment claim against Coppick and $91,000 in compensatory damages and $65,000 in punitive damages for his First Amendment claim against Plowman. Doc. 107, PageID 1688–91, 1696–99, 1700, 1702. Because the Court has

determined that Bauer is entitled to judgment under Rule 50(b), the Court need not address Defendants' request for remittitur as to him.

**1. Standard of Review**

A party may move to alter or amend a judgment, including for remittitur of an allegedly excessive damages award. Fed. R. Civ. P. 59(e). "A remittitur should be granted only 'if the award *clearly* exceeds the amount which, under the evidence in the case, was the maximum that the jury reasonably could find to be compensatory for the plaintiff's loss.'" *Babcock Power, Inc. v. Kapsalis*, 85 F. App'x 1, 5 (6th Cir. 2021) (quoting *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988)) (other citations and quotations omitted). "A trial court is within its discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Gregory v. Shelby Cnty.*, 220 F.3d 433, 443 (6th Cir. 2000).

**2. Compensatory Damages**

The Sixth Circuit has made clear that a jury verdict should not be remitted "unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 547 (6th Cir. 2007) (quoting *Farber v. Massillon Bd. of Educ.*, 917 F.2d 1391, 1395 (6th Cir. 1990)). A court should uphold a compensatory damages award unless it is: "(1) beyond the range supportable by proof; or (2) so excessive as to shock the conscience; or (3) the result of a mistake." *Gregory*, 220 F.3d at 443 (citing *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 156 (6th Cir. 1996)).

**i. Coppick**

Defendants assert the award of $43,000 in compensatory damages to Meadows on his Eighth Amendment excessive force claim against Coppick is an "excessive and unsupported award that should shock the conscience of the Court." Doc. 115, PageID 2545. They ask that the award be reduced to zero or a nominal amount. *Id.* at PageID 2551.

Defendants primarily argue that Meadows suffered only "three minor lacerations," without any lasting impairment that caused continued pain or suffering. *Id.* at PageID 2545. But the mere absence of lasting physical impairment does not reduce Meadows' injury to a nominal or non-compensable harm. *Parrish v. Johnson*, 800 F.2d 600, 603, 609–10 (6th Cir. 1986). Meadows suffered an acute physical injury. Considering the evidence presented at trial, an award of $43,000 is not beyond the maximum damages a jury could reasonably find adequately compensates Meadows. *Denhof*, 494 F.3d at 547.

The video evidence shows that Coppick slammed Meadows head into a concrete wall. PX-4. The video evidence and Meadows' testimony, viewed in a light most favorable to Meadows, also could permit a reasonable jury to find that Coppick slammed Meadows' head, at least once more, into the floor when Coppick and other corrections officers took Meadows to the ground just after taking him through the sallyport gate. PX-4; Tr., Doc. 110, 2-192:13–21. As a result of these events, Meadows was severely bleeding and had several visible lacerations on his head and face that required medical treatment. PX-4; DX-4. Beyond the visible injuries, Meadows testified that he was "in and out" causing him to only "vaguely" remember some of the events. Tr., Doc. 110, 2-191:7–11; 2-225:6. Meadows told the jury he was "discombobulated" and that he "didn't even realize until the next day . . . some of the

things that even occurred." *Id.* at 2-197:8–15. He experienced permanent scarring on his head and near his eye as a result of his injuries. *Id.* at 2-201:19–24.

Though Meadows suffered acute, rather than permanent physical injury, *Holmes* confirms that a jury's compensatory award in the range of $43,000 may be sustained where the record, like the one that exists here, supports those injuries. *Holmes*, 78 F.3d at 1048–49 (reinstating jury verdict and judgment, including a compensatory damages award of $50,000 in a non-prisoner excessive force case because the compensatory award was not unreasonable or excessive). Further, *Holmes* counsels against substituting the Court's assessment of the evidence for the jury's reasonable valuation. *Id.* For these reasons, the Court upholds the compensatory award against Coppick as it is not so excessive as to shock the conscience.

**ii. Plowman**

As to Plowman, Defendants contend that the evidence admitted at trial does not support an award of $91,000 in compensatory damages because there is no evidence that Meadows suffered an actual injury as a result of the purported retaliation. But Defendants concede that Meadows may recover damages on a First Amendment retaliation claim upon showing that the constitutional violation caused compensable harm, including mental or emotional injury. *King v. Zamiara*, 788 F.3d 207, 214 (6th Cir. 2015); *Maben v. Thelen*, 887 F.3d 252, 271 (6th Cir. 2018); Doc. 115, PageID 2542. In other words, Meadows need not show physical injury. *Id.*

Defendants argue that Meadows cannot show actual injury because, in their view, the evidence does not show that Plowman's actions resulted in a security classification change for Meadows. Doc. 115, PageID 2543–44. Meadows disputes this characterization. Doc. 118, PageID 2642. Regardless of whether Meadows' security classification was technically

changed, the evidence admitted at trial shows that Meadows was placed in restrictive housing on July 31, 2019, with a presumptive release date of July 31, 2021, based on Plowman's report that he overhead Meadows plotting to kill a female corrections officer. PX-22. Further evidence showed that Meadows was confined there *for two years*. Tr., Doc. 110, 2-179:9–12.

Meadows testified that after he was moved on July 31, 2019, he was held in "the most secure place at the prison . . . where the people come to be executed . . . where they house them and . . . where they execute them." Tr., Doc. 111, 3-105:15–21. He described it as "depressing" and "horrible" explaining the cells were "trifling" and "nasty." Tr. Doc., 110, 2-218:2–5. He could talk to other people but only "through the vents." *Id.* at 2-218:6–8. In reality, he said he was "better off talking to [himself] . . . [he] did a lot of that." *Id.* He could not see other people. *Id.* at 2-218:13–14. Meadows also told the jury that he had no contact with the outside world. Tr., Doc. 111, 3-105:22–23. In his view, there are no worse cells in the prison system "when [it] comes to your mental state and what it does to your head." *Id.* at 3-105:22–23; 3-106:1. Though Defendants attempt to cast doubt on the effects that the restrictive housing placement had on Meadows' mental state based on his lack of mental health treatment, Meadows testified he declined to take psychotropic drugs while housed there because he did not trust the mental health care that he would be receiving. *Id.* at 3-111:23–3:112:11. When viewing all the evidence presented at trial in Meadows' favor, a reasonable jury could find Meadows suffered compensable harm by way of mental or emotional injury.

There is no question, however, that compensatory damages on this claim are difficult to quantify. The Court is reminded that under these circumstances the focus of the award must be on actual injury and not on "the abstract value of the constitutional right at issue" or

"the importance of the right in our system of government." *King*, 788 F.3d at 214 (quoting *Piver v. Pender Cnty. Bd. of Educ.*, 835 F.2d 1076, 1082 (4th Cir. 1987)). That said, "presumed damages" based on the approximation of the harm that the plaintiff actually suffered are permitted. *Id.* at 214. Based on the evidence presented at trial, an award of $91,000 in compensatory damages, which equates to approximately $125 per day that Meadows spent in restrictive housing as a result of Plowman's conduct, is not "clearly excessive" or "so excessive . . . as to shock the judicial conscience of the court." *Gregory*, 220 F.3d at 443. Thus, the compensatory damages award must be upheld. *See*, *e.g.*, *Trobaugh v. Hall*, 176 F.3d 1087, 1089 (8th Cir. 1999) (reversing and remanding a district court's award of $1 and recommending an award of $100 per day as an appropriate compensatory award for deprivation of First Amendment rights resulting from a higher security classification).

**3. Punitive Damages**

"Punitive damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King*, 788 F.3d at 216 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). When a party challenges a punitive damages award under the Fifth Amendment's Due Process Clause, there are three guideposts to consider: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Kidis v. Reid*, 976 F.3d 708, 715 (6th Cir. 2020) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (6th Cir. 2003)).

Defendants also challenge the punitive damages awarded against Coppick and Plowman. They argue that a jury could not find, based on the evidence, that Coppick or Plowman acted with malicious or evil intent to justify an award of $30,000 in punitive damages against Coppick nor an award of $65,000 in punitive damages against Plowman. Doc. 115, PageID 2548–50. The Court disagrees and will consider Defendants' assertions against the backdrop of the guideposts that guide the analysis.

The first guidepost favors both punitive awards. In assessing the first guidepost, reprehensibility, courts must consider whether: "the harm was physical rather than purely economic; the tortious conduct evinced an 'indifference to or a reckless disregard of the health or safety of others'; 'the conduct involved repeated actions or was an isolated incident'; and the harm resulted from 'intentional malice, trickery, or deceit, or mere accident.'" *Kidis*, 976 F.3d at 716 (citing *State Farm*, 538 U.S. at 419). Starting with Coppick, the jury found that Coppick used excessive force in violation of the Eighth Amendment based on evidence that Coppick slammed Meadows' head against a concrete wall, causing severe bleeding and lacerations to his head and face. As this Court has explained, a reasonable jury could have found that Coppick acted maliciously and sadistically to cause harm to Meadows, so the verdict supports the intentional-malice consideration within the context of reprehensibility. Further, the harm Meadows suffered was physical and resulted from indifference or reckless disregard for his health and safety. Thus, the evidence satisfies the first guidepost.

The same is true for Plowman. "When a defendant retaliates against a plaintiff's exercise of his First Amendment rights, the defendant necessarily acts with the purpose of infringing upon the plaintiff's federally protected rights." *King*, 788 F.3d at 216 (citing *Thaddeus-X*, 175 F.3d at 394). So, a defendant like Plowman "who has been found liable for

First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages." *Id.* at 216–17. Thus, a finding of First Amendment retaliation supports the conclusion that the conduct was intentional rather than accidental and warrants consideration of punitive damages. Further, a reasonable jury could have found that Plowman retaliated against Meadows for trying to file grievances and that the retaliation resulted in Meadows' two-year placement in restrictive housing. This favors a finding of intentional malice. *State Farm*, 538 U.S. at 419. Though the conduct involved an isolated incident and did not necessarily show indifference to or a reckless disregard for the health or safety of others, the harm Meadows suffered was not purely economic. Two years of restrictive housing constitutes a substantial deprivation of liberty. And the evidence, viewed in a light most favorable to Meadows, shows that Meadows suffered mental and emotional injury as a result. *See supra*. Thus, on balance, the evidence satisfies the first guidepost.

The second guidepost also favors upholding the award. This guidepost considers the disparity between the actual or potential harm suffered and the punitive damages award. *Kidis*, 976 F.3d at 715. In this case, the jury awarded $43,000 in compensatory damages and $30,000 in punitive damages as to Coppick and $91,000 in compensatory damages and $65,000 in punitive damages as to Plowman. The resulting ratios are 0.70 to 1.0 and 0.71 to 1.0, respectively, meaning that the punitive awards are less than the compensatory awards. These ratios are markedly different than the ratio at issue in *Kidis*, where the jury awarded $1 in compensatory damages and $200,000 in punitive damages, *id.* at 714–15, and fall well within the range ordinarily permitted by due process. Though there is no firm rule, in *Bridgeport Music Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 487 (6th Cir. 2007), the Sixth Circuit observed that "where only one of the reprehensibility factors is present, a ratio in the range of

1:1 to 2:1 is all that due process will allow." Here, three of those factors are present as to Coppick and two of those factors are present as to Plowman and both ratios are below those ranges. Additionally, these are far below the four to one range that the Supreme Court has likened to "close to the line of constitutional impropriety." *State Farm*, 538 U.S. at 425.

The third guidepost is concerned with the difference between the punitive damages and the civil penalties authorized or imposed in similar cases. *Id.* at 418 (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996)). "The purpose of this guidepost reflects an elementary principle of due process — namely, that the defendant must have been provided 'fair notice' that its conduct would subject it to a penalty on the order of the punitive damages award." *Romanski v. Detroit Ent., LLC*, 428 F.3d 629, 648 (6th Cir. 2005) (citing *Gore*, 517 U.S. at 583–84). Here, neither § 1983 nor the First or Eighth Amendments prescribe a civil monetary penalty for a correctional officer's use of excessive force or retaliatory use of the disciplinary process. And the parties have not identified meaningful benchmarks. But the absence of a precise civil-penalty comparator is not dispositive where the award finds support in comparable cases. *Kidis*, 976 F.3d at 715–717. The reduced award in *Kidis* supports the award against Coppick. Assessing awards rendered in other comparable excessive force cases, the Sixth Circuit reduced a $200,000 punitive damages award to $50,000. *Id.* This aligns with the $30,000 award rendered against Coppick. The award against Plowman finds support in *Siggers-El v. Barlow*, 433 F. Supp. 2d 811 (E.D. Mich. 2006) where the prisoner prevailed on a First Amendment retaliation claim after being transferred to another facility in retaliation for his actions. There, the district court upheld a punitive damages award of $200,000—more than three times the amount awarded to Meadows in this case on his First Amendment

retaliation claim. *Id.* at 819–20. As a result, Defendants have failed to persuade the Court that the punitive awards against Coppick and Plowman violate due process.

## II. CONCLUSION

For the foregoing reasons, Defendants' Rule 50(b) Motion (Doc. 114) is **GRANTED** as to Defendant Bauer and **DENIED** as to Defendant Coppick and Defendant Plowman, and Defendants' Rule 59(e) Motion (Doc. 115) is **DENIED** as to Defendant Coppick and Defendant Plowman and **DENIED AS MOOT** as to Defendant Bauer.

Plaintiff filed his Fee Motion (Doc. 116) based on a jury verdict rendered against all Defendants, including Defendant Bauer. The Court therefore **DENIES WITHOUT PREJUDICE** to renewal Plaintiff's Fee Motion (Doc. 116) and **DIRECTS** Plaintiff to file an amended Fee Motion to account for the modified judgment entered in favor of Defendant Bauer on the Eighth Amendment claim under Rule 50(b). *See* 42 U.S.C. § 1997e(d)(1)(A) and (B) (A prisoner may only qualify for attorney's fees under the PLRA if the fees were "directly and reasonably incurred in proving an *actual violation* of the plaintiff's rights" and if the fees are "proportionately related" to the damages awarded for the violation) (emphasis added); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983) ("[W]ork on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"). Defendants' **STAY MOTION** (Doc. 123) is therefore **DENIED AS MOOT**. Defendants may renew their request to stay any amended Fee Motion pending any forthcoming appeal by either party. For these reasons, the Court also **DENIES AS MOOT** Plaintiff's Follow-Up Motion (Doc. 128).

**IT IS SO ORDERED.**

September 30, 2026

Jeffery P. Hopkins
United States District Judge